# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| AMERICAN CIVIL LIBERTIES UNION ) | |
| 125 Broad Street – 18th Floor ) | |
| New York, NY 10004, ) | |
| ) | |
| AMERICAN CIVIL LIBERTIES UNION ) | |
| FOUNDATION ) | |
| 125 Broad Street – 18th Floor ) | |
| New York, NY 10004, ) | |
| ) | |
| *Plaintiffs,* ) | |
| ) | |
| v. ) | No. 1:20-cv-_____ |
| ) | |
| FEDERAL BUREAU OF PRISONS, ) | |
| 320 First Street, NW ) | |
| Washington, DC 20535, ) | |
| ) | |
| *Defendant.* ) | |
| _____) | |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1.      Plaintiffs American Civil Liberties Union and American Civil Liberties Union

Foundation (together, the "ACLU") bring this action against the Federal Bureau of Prisons

(BOP) under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Declaratory

Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking declaratory and injunctive relief to compel

compliance with the requirements of FOIA to immediately release improperly withheld agency

records.

## INTRODUCTION

2.      As the global pandemic forces the nation into an unprecedented economic crisis,

the number of COVID-19 cases continues to rise dramatically across the United States. Carceral

settings in particular are hotspots for the virus, with all fourteen of the largest clusters of

COVID-19 cases at jails or prisons.[1]

3.      In recognition that the health consequences of the virus can be devastating, long-

lasting, and deadly, and that even those in low-risk groups can bring the virus home to medically

vulnerable family members and the community at large, on March 13, 2020 the BOP suspended

all visitation—including legal visitation—at its facilities nationwide, a policy that remains in

effect today.[2] On May 18, 2020, the Department of Justice (DOJ) issued a memorandum

providing guidelines for its own staff that include stay-at-home orders, requiring mask-wearing

and strict social distancing when working in their buildings, restricting all but essential travel,

and mandating a period of quarantine following such travel.[3]  The guidelines conclude by stating

that conditions and trends nationwide will need to be monitored continually and further

precautionary steps taken if circumstances "take a turn for the worse."[4]  It is undeniable that they

did.[5]

4.      Against this backdrop, on June 15, 2020, the Federal Government announced its

plan to resume executions of federal prisoners—the first in nearly two decades. Just days after

this announcement the United States had back-to-back record highs in daily new COVID-19

infections.[6] In response to these growing numbers, accompanied by a rising death toll, many

---

[1] *See e.g.*, *Coronavirus in the U.S. Latest Map and Case Count*, New York Times (Updated Aug. 13, 2020) https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html#clusters.
[2] *See* BOP Implementing Modified Operations (last visited August 13, 2020) https://www.bop.gov/coronavirus/covid19_status.jsp
[3] Memorandum from Lee Lofthus, Assistant Attorney Gen., U.S. Dept. Of Justice, on Department Framework for Returning to Normal Operations Status (May 18, 2020), https://www.justice.gov/doj/page/file/1284406/download.
[4] *Id.*
[5] *See generally*, https://www.nytimes.com/2020/06/23/us/politics/fauci-congress-coronavirus.html?campaign_id=57&emc=edit_ne_20200623&instance_id=19651&nl=evening-briefing&regi_id=63279258&segment_id=31681&te=1&user_id=e27e7b0d7aea63ea866f5214df1362cd.
[6] Hanna Knowles, et al., *U.S. sets another single-day record for new coronavirus cases*, Washington Post (June 25, 2020), https://www.washingtonpost.com/nation/2020/06/25/coronavirus-live-updates-us/.

states paused their reopening plans, and some even began imposing restrictions they had lifted earlier.[7]

5.      Meanwhile, the Federal Government amassed hundreds of people at the Federal Correctional Complex, Terre Haute (FCC Terre Haute)—a facility with a known COVID-19 outbreak[8]—for the sole purpose of carrying out the executions of Daniel Lee on July 14, 2020, Wesley Purkey on July 16, 2020, and Dustin Honken on July 17, 2020. The government proceeded with these executions even though BOP learned that one of its staff members, who had been working in the prison without a mask and attending meetings with other staff involved in the executions, tested positive for COVID-19.[9]

6.      Following the back-to-back July executions, Vigo County, where FCC Terre Haute is located, experienced a major surge in confirmed COVID-19 cases. Despite this data, the federal government now seeks to rush forward with four more executions at the end of August and September.

7.      As the nation faces both dire public health and economic crises, the federal government's actions prioritizing the use of American tax dollars on executions that could further spread the virus is a matter of public concern.  For this reason, the ACLU submitted a FOIA request (the "Request") to BOP on August 6, 2020 seeking records related to this issue, including information about COVID-19 conditions within FCC Terre Haute and expenses

---

[7] *See e.g.*, Corky Siemasko, *Texas and Florida Close Bars After Explosion of COVID-19 Cases,* NBC News (June 26, 2020) https://www.nbcnews.com/news/us-news/texas-close-bars-limit-restaurant-dining-due-explosion-covid-19- n1232233.
[8] *See e.g.,* Nina T. Harawa, *As COVID-19 flares behind bars, now's not the time for more Terre Haute executions,* IndyStar (Updated July 11, 2020) https://www.indystar.com/story/opinion/2020/07/08/op-ed-coronavirusflares-behind-bars-now-not-time-executions/5389249002/; *Worker aiding in federal execution prep tests positive for COVID-19,* Kark News (July 12, 2020) https://www.kark.com/news/localnews/worker-aiding-federal-execution-prep-tests-positive-for-covid-19/.
[9] *See generally*, *Hartkemeyer v. Barr, et al.,* No. 2:20-cv-0036-JMS-DLP, ECF 77-1, (Declaration of Rick Winter, July 12, 2020).

associated with federal executions.  The ACLU sought expedited processing of the request.

Although BOP granted expedited processing on August 7, 2020, it has failed to produce any

records or otherwise respond to the request. With the next scheduled execution less than one-

week away, the ACLU now brings this action seeking immediate release of the requested

material as required by FOIA.

### JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action and personal

jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B). The Court also has jurisdiction

over this action pursuant to 28 U.S.C. § 1331, and authority to issue a declaratory judgment

pursuant to 28 U.S.C. §§ 2201 and 2202.

9.      Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §

1391(e).

### PARTIES

10.     Plaintiff American Civil Liberties Union is a nationwide non-profit and

nonpartisan organization with approximately two million members dedicated to protecting the

fundamental liberties and basic civil rights guaranteed by the state and federal Constitutions.

Within the national legal department of the ACLU, the Capital Punishment Project upholds those

rights in the context of death penalty litigation, systemic reform, and public education and

advocacy. The ACLU is committed to ensuring that the United States government complies with

the Constitution and laws of this country in matters that affect civil liberties and human rights,

including in the context of the capital punishment. The ACLU is also committed to principles of

transparency and accountability in government, and seeks to ensure that the American public is

informed about the conduct of its government in matters that affect civil liberties and human

4

rights. Obtaining information about governmental activity, analyzing that information, and widely publishing and disseminating it to the press and the public is a critical and substantial component of the ACLU's work and one of its primary activities.

11.     Plaintiff American Civil Liberties Union Foundation is an affiliated non-profit and nonpartisan organization that shares the goals of the American Civil Liberties Union and represents parties in civil rights and civil liberties litigation.

12.     Defendant BOP is an agency of the United States Government within the meaning of 5 U.S.C. § 551, 5 U.S.C. § 552(f), and 5 U.S.C. § 702. The agency, headquartered in Washington, D.C., has possession, custody, and control of the records that Plaintiffs seeks.

## FACTS

### A. Background

13.     On July 2, 2020, the ACLU filed suit on behalf of Reverend Dale Seigen Hartkemeyer, the medically vulnerable spiritual advisor for Wesley Purkey, alleging that carrying out Mr. Purkey's scheduled execution during the pandemic at a facility with a known COVID-19 outbreak burdened Rev. Hartkemeyer's right to the free exercise of religion by forcing him to choose between his spiritual obligation to be present at Mr. Purkey's execution and protecting his own health and safety. *Hartkemeyer v. Barr*, *et al.,* No. 2:20-cv-0036-JMS-DLP (S.D. Ind.)  Father O'Keefe, the medically vulnerable spiritual advisor for federal prisoner Dustin Honken, joined the *Hartkemeyer* suit and sought postponement of Mr. Honken's execution. Relatedly, the surviving victims' family members in the Daniel Lee case also filed suit challenging as an arbitrary agency action the government's plan to execute Mr. Lee during the pandemic. *Peterson v. Barr*, 2:20-cv-00350-JMS-DLP (S.D. Ind.).  Both suits sought

preliminary injunctions, and although an injunction was issued in the *Peterson* case, it was

ultimately vacated and the government executed all three men in the third week of July.

14.     Many of the facts presented to the court in the two lawsuits stemmed from

declarations BOP counsel Rick Winter had submitted describing the execution process.  The first

declaration, submitted in November, 2019 in connection with litigation about the

constitutionality of the lethal injection protocol,[10] detailed the large number of individuals

involved in federal executions, including:

1. The "execution team, which consists of 40 BOP staff members," who normally conduct a "wide range of correctional and administrative positions," some of whom will require travel and lodging arrangements, and who will spend several days before the executing practicing and preparing for the execution;[11]
2. Approximately 200 FCC Terre Haute staff, who will be "pulled away from their normal duties" to perform security and support for the execution;[12]
3. Specialized BOP teams of 50 individuals each traveling to FCC Terre Haute from other BOP institutions, like the Special Operations Response Team and Disturbance Control Team;[13]
4. Additional contractors "who have made themselves available" and "presumably have made any necessary arrangements for personal and work related matters";[14]
5. Additional staff from various federal, state, and local law enforcement agencies.[15]

Mr. Winter noted that the BOP intended to arrange and pay for the travel and lodging of the

special teams, the execution team, a number of BOP administrators, and the victims' family

members.  *Id*.  He further explained that shifts in staffing caused by the executions would force

the prison to make alternative meal plans for 2,600 federal prisoners in the days around the

executions "at a greatly increased cost to the BOP."[16]

---

[10] *Re Matter of Federal Bureau of Prisons' Execution Protocol Cases*, No. 1:19-mc-145-TSC, Declaration of Rick Winter ("Winter Decl."), ECF No. 54 (D.D.C. Nov. 21, 2019).
[11] *Id*. ¶ 5.
[12] *Id*. ¶ 8.
[13] *Id* ¶ 10.
[14] *Id*. ¶ 6.
[15] *Id*. ¶ 7.
[16] *Id*.  ¶ 8.

15.     On July 12, 2020 – the day before the first of the three scheduled executions—

Mr. Winter disclosed that a BOP staff member had tested positive for the virus the day before, on

July 11, 2020. *Hartkemeyer v. Barr, et al.,* No. 2:20-cv-0036-JMS-DLP, ECF 77-1, ¶ 4

(Declaration of Rick Winter, July 12, 2020). Between his exposure to the virus and testing

positive, a period of at least four days, this staff member did not wear a mask, contrary to Mr.

Winter's prior declarations. The infected staff member attended several meetings with law

enforcement and other staff involved in security and preparations for the July executions. The

staff member also spent time in the Special Confinement Unit (SCU), where the death row

prisoners scheduled for executions are held and where the BOP offered social, legal and spiritual

advisor visits for Mr. Lee, Mr. Purkey, and Mr. Honken prior to their executions.

16.     Despite the exposure of an infected staff member to death row prisoners and other

BOP staff involved in the July executions, BOP still carried out three back-to-back executions in

July. Shortly afterwards, COVID-19 cases in Vigo County, where the federal executions were

carried out, rose significantly.[17]

**B.  Plaintiffs' FOIA Request and Defendant's Response**

17.     On August 6, 2020, Plaintiffs submitted a FOIA Request (attached hereto as

Exhibit 1) to Defendant seeking the release of two categories of records: (1) COVID-19 data at

FCC Terre Haute, where federal prisoners are detained and executed; and (2) cost and staffing

data related to federal executions. Specifically, Plaintiffs requested the following:

**COVID-19 Data**

1.  All records that relate to COVID-19 testing statistics at the United States
    Penitentiary, Terre Haute (USP Terre Haute) and the Federal Correctional
    Institution, Terre Haute  (FCI Terre Haute) from March 13, 2020 to the
    present. This includes, but is not limited to:

---

[17] Indiana COVID-19 Data Report, Aug. 4, 2020, https://www.coronavirus.in.gov/2393.htm.

    a.   the number of COVID-19 tests administered to prisoners and staff;
    b.   the statistical results of those tests;
    c.   the dates those tests were administered;
    d.   the number of staff who tested positive whose duties have taken them into the SCU at USP Terre Haute on or after July 1, 2020; and
    e.   the number of staff who were administered COVID 19 tests and who were involved in preparing for or carrying out any of the three federal executions in July 2020, and the results of such testing.

2.   All documents or materials pertaining to any contact-tracing and other steps taken by BOP to identify staff and prisoners who may have been exposed to individuals infected with COVID-19.

3.   All documents related to the "issue at the SCU" attended to by a COVID-19 positive FCI staff member reported in the July 12, 2020 Declaration of Rick Winter. This includes, but is not limited to the following information:
    a.   The nature of the issue that required staff attention;
    b.   whether any of the prisoners involved in the incident had or have execution dates;
    c.   the identity of staff and prisoners who were exposed to the infected staff member;
    d.   the date and length of time the infected staff member was in the SCU.

4.   All documentation identifying the numbers of staff and prisoners who were involved in any events or activities with the COVID-19 positive FCI staff member reported in the July 12, 2020 Declaration of Rick Winter. This includes but is not limited to
    a.   meetings with outside law enforcement in preparation for the scheduled executions; and
    b.   meetings regarding the handling of demonstrators at the scheduled executions.

5.   All records that describe the ventilation in the execution facility and all records that discuss or relate to the possibility of modifications or improvements to that ventilation because of COVID- 19.

**Execution Cost and Staffing Data**

6.   All documents describing the number of individuals that were involved in preparing for and carrying out of the federal executions in July and the number of individuals who are currently planned to be involved in the executions of Lezmond Mitchell on August 26, 2020, Keith Nelson on August 28, 2020, William LeCroy on September 22, 2020, and Christopher Vialva on September 24, 2020. This includes, but is not limited to:
    a.   BOP staff;
    b.   federal, state, and local law enforcement officers; and

      c.   individuals hired on a contractual basis.

7.   All documents describing the functions that were performed by contractors for the July executions and will be performed by contractors for the August executions.

8.   All documentation related to the costs of carrying out the executions of Daniel Lee on July 14, 2020, Welsey Purkey on July 16, 2020, and Dustin Honken on July 17, 2020, including, but not limited to, materials pertaining to:
    a.   costs of transporting staff, witnesses, media and/or protestors in relation to the execution;
    b.   housing costs related to the executions, including hotels or housing in Terre Haute for victims' family members, contractors, BOP and other federal staff from other facilities;
    c.   the contracts for third parties hired for any purpose related to the executions, including, outside cleaning companies used to sanitize the execution chamber, visiting rooms used by prisoners with warrants, and witness staging areas prior to and between executions;
    d.   the cost associated with utilizing other federal, state, and local law enforcement agencies to provide security for the executions;
    e.   the increased cost to BOP staffing changes caused by the executions, including alterations in meal preparation for the prisoners at FCC Terre Haute.

9.   Any documentation listing the facilities where BOP staff have traveled or will travel from in order to provide additional security and support for the July and August executions.

10.   Any documentation listing the expenses related to items purchased for the purpose of conducting executions, including but not limited to:
    a.   additional personal protective equipment;
    b.   lethal injection drugs;
    c.   equipment used to administer lethal injection drugs.

18.    Plaintiffs sought expedited processing of the Request on the basis that there is a "compelling need" for the records because the ACLU is primarily engaged in disseminating information, and the records sought are urgently needed to inform the public about actual or alleged federal government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v). Specifically, the ACLU requested BOP disclose the records related to the July executions within ten days of receiving the request. Such an expedited timetable is necessary given the Federal Government's plan—despite

the continued rise in COVID-19 cases—to proceed with four additional back-to-back executions at FCC Terre Haute at the end of August and in September, the first of which is scheduled for August 26, 2020.

19.     Plaintiffs also sought a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government" and is not in the ACLU's commercial interest. *Id.* § 552(a)(4)(A)(iii).

20.     By email dated August 7, 2020 (attached hereto as Exhibit 2), the BOP acknowledged receipt of the Request, assigned it reference number 2020-06027, and stated that the "request meets the requirements to be processed on an expedited basis." The email also stated, however, that processing "may take up to six months."

21.     To date, the BOP has neither produced any records nor indicated what if any responsive documents it intends to produce.

22.     FOIA requires agencies of the federal government to "promptly" release records to the public upon request, unless a specific statutory exemption applies or disclosure is prohibited by law. 5 U.S.C. § 552(a)(3)(A). An agency must determine within twenty working days after receipt of a request for records whether to comply with the request and immediately notify the requester of its determination and the reasons therefor. 5 U.S.C. § 552(a)(6)(A)(i).

23.     A requester may seek expedited processing of a request where there is a "compelling need." 5 U.S.C. § 552(a)(6)(E). An agency must process "as soon as practicable" any request for records to which it has granted expedited processing. 5 U.S.C. § 552(a)(6)(E)(iii).

24.     A requester is deemed to have exhausted its administrative remedies if the agency fails to comply with FOIA's applicable time limit provisions. 5 U.S.C. § 552(a)(6)(C)(i). Here,

BOP granted expedited processing because the requested information is pertinent to the Federal Government's plan to conduct additional executions in less than one week. Plaintiffs are therefore entitled to the requested material in advance of the first planned execution, scheduled for August 26, 2020, and seek immediate judicial review.

## CLAIM FOR RELIEF
### (Violation of FOIA, 5 U.S.C. § 552)

25.     Plaintiffs properly requested records within the possession, custody, and control of Defendant.

26.     Defendant is an agency subject to and within the meaning of FOIA, 5 U.S.C. § 552(f) and must therefore release in response to a FOIA request any non-exempt records and provide a lawful reason for withholding any materials.

27.     Defendant is wrongfully withholding non-exempt agency records requested by Plaintiffs by failing to produce records responsive to the ACLU's FOIA request.

28.     The failure of Defendant to make reasonable efforts to search for records responsive to the Request violates FOIA, 5 U.S.C. § 552(a)(3), and Defendant's corresponding regulations.

29.     The failures of Defendant to process "as soon as practicable" the Request, which was granted expedited processing and to release non-exempt records violates FOIA, 5 U.S.C. § 552(a)(3)(A), (a)(6)(E)(iii) and Defendant's corresponding regulations.

30.     The failure of Defendant to grant Plaintiffs' request for a waiver of search, review, and duplication fees violates FOIA, 5 U.S.C. § 552(a)(4), (a)(6), and Defendant's corresponding regulations.

31.     Plaintiffs are therefore entitled to declaratory and injunctive relief requiring Defendant to promptly produce all non-exempt records responsive to its FOIA request and to justify the withholding of any responsive records withheld under claim of exemption.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the Court:

a.   Declare unlawful the Defendant's failure to comply with FOIA;

b.   Declare that Plaintiffs are entitled to disclosure of the requested records;

c.   Order Defendant to immediately process the Request and disclose, in their entirety, unredacted versions of all records responsive to Plaintiffs' Request that are not specifically exempt from disclosure under FOIA, including any non-identical copies of any such records;

d.   Enjoin Defendant from charging Plaintiffs search, review or duplication fees for the processing of the Request;

e.   Enjoin Defendant from continuing to withhold any and all non-exempt records responsive to Plaintiffs' Request;

f.   Retain jurisdiction of this action to ensure that no agency records are wrongfully withheld;

g.   Award Plaintiffs their reasonable attorney's fees and litigation costs incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

h.   Grant such other relief as the Court may deem just and proper.

DATED: August 21, 2020                    Respectfully submitted,

                                          Cassandra Stubbs*
                                          Henderson Hill (D.C. Bar No. 358378)
                                          Amy Fly
                                          AMERICAN CIVIL LIBERTIES UNION
                                          FOUNDATION
                                          201 W. Main St., Suite 402
                                          Durham, NC 27701
                                          (919) 688-4605
                                          hhill@aclu.org
                                          cstubbs@aclu.org

                                          /s/ *Arthur B. Spitzer*
                                          Arthur B. Spitzer (D.C. Bar No. 235960)
                                          American Civil Liberties Union Foundation
                                          of the District of Columbia
                                          915 15th Street, NW, 2nd floor
                                          Washington, DC 20005
                                          (202) 601-4266
                                          aspitzer@acludc.org

                                          *Attorneys for Plaintiffs*

---

*Motion for admission *pro hac vice* forthcoming.