**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| _____ | ) | |
| AMERICAN CIVIL LIBERTIES UNION, | ) | |
| | ) | |
| AMERICAN CIVIL LIBERTIES UNION | ) | |
| FOUNDATION, | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| v. | ) | No. 1:20-cv-02320 (RBW) |
| | ) | |
| FEDERAL BUREAU OF PRISONS, | ) | |
| | ) | |
| *Defendant*. | ) | |
| _____ | ) | |

**<u>MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A
TEMPORARY RESTRAINING ORDER</u>**

/s/ *Arthur B. Spitzer*
Arthur B. Spitzer (D.C. Bar No. 235960)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF THE DISTRICT OF
COLUMBIA
915 15th Street, NW, 2nd floor
Washington, DC 20005
(202) 601-4266
aspitzer@acludc.org

Cassandra Stubbs*
Henderson Hill (D.C. Bar No. 358378)
Amy Fly
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
201 W. Main St., Suite 402
Durham, NC 27701
(919) 688-4605
cstubbs@aclu.org
hhill@aclu.org
afly@aclu.org

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

STATEMENT OF FACTS ................................................................................................................ 2
    A.    Media Coverage COVID-19 at FCC Terre Haute and the Executions of Federal Prisoners During the COVID-19 Crisis ............................................................................................... 2
    B.    Plaintiffs' FOIA Request and Defendant's Grant of Expedited Processing ..................... 6
ARGUMENT ................................................................................................................................... 7
    A.    The Court has Jurisdiction, and Authority, to Grant the Requested Relief ...................... 8
    B.    Plaintiffs are Entitled to Entry of a Temporary Restraining Order ................................ 10
    C.    Plaintiffs Are Likely to Succeed on the Merits .............................................................. 10
    D.    Plaintiffs will Suffer Irreparable Injury in the Absence of the Requested Injunctive Relief ............................................................................................................................................. 13
    E.    Injunctive Relief Will Not Burden Others' Interests ..................................................... 14
    F.    The Public Interest Favors the Requested Relief .......................................................... 15
CONCLUSION .............................................................................................................................. 15

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                                          )
AMERICAN CIVIL LIBERTIES UNION,       )
                                                                          )
AMERICAN CIVIL LIBERTIES UNION       )
FOUNDATION,                                                  )
                                                                          )
              *Plaintiffs*                                        )
                                                                          )
      v.                                                          )      No. 1:20-cv-02320 (RBW)
                                                                          )
FEDERAL BUREAU OF PRISONS,            )
                                                                          )
              *Defendant*.                                     )
_____)

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A
TEMPORARY RESTRAINING ORDER**

**PRELIMINARY STATEMENT**

Plaintiffs American Civil Liberties Union and American Civil Liberties Union Foundation (collectively the "ACLU"), the nation's oldest and largest civil liberties organization, submitted a Freedom of Information Act request to the Federal Bureau of Prisons (BOP) seeking records concerning the Government's unprecedented attempt to carry out a host of federal executions within a facility with a known COVID-19 outbreak, all while the nation is in the grip of the deadly pandemic. The records at issue concern a matter of great interest, both to ACLU members and to the broader public. The ACLU and other reporters and commentators have repeatedly questioned whether the federal executions should proceed in light of the COVID-19 conditions, and the withheld information is critical to the national dialogue on the wisdom and morality of carrying out such executions.

1

Plaintiffs now seek a TRO to prevent the BOP from withholding documents of such critical national interest and requiring the expedited processing and release of agency records to which the BOP has already agreed it is entitled. This an urgent matter because of four upcoming federal executions, the first of which is scheduled for this Wednesday, August 26, 2020.

Plaintiffs submitted their request for the information on August 6, 2020, seeking expedited processing. Defendant BOP acknowledged that the requested information falls within the narrow category of FOIA requests for which Congress has mandated expedited processing by granting the request for expedited processing the following day, August 7, 2020. Nonetheless, Defendant estimated that such expedited processing might take up to six months, and as of today's filing, Defendant has failed to process to the FOIA request or produce any documents. With the next federal executions just days away, Defendant BOP's failure to process Plaintiffs' request—the effect of which is to deny Plaintiffs the expedition to which they are legally entitled—is both procedurally and substantively flawed. Because time is of the essence to Plaintiffs' rights and Defendant's obligations, and because the information at issue concerns a matter of extraordinary public interest, Plaintiffs seek this Court's expedited consideration of this matter and entry of an order compelling Defendant to immediately process and disclose a limited subset of the requested records.

## STATEMENT OF FACTS

### A. Media Coverage COVID-19 at FCC Terre Haute and the Executions of Federal Prisoners During the COVID-19 Crisis

The federal government's announcement in June of its plan to carry out three back-to back executions in mid-July at the Terra Haute Federal Correctional Complex , a prison with a

known COVID-19 outbreak,[1] prompted immediate public concern about the safety of such a plan during the pandemic.[2] While most states postponed scheduled executions because of the risk of further spreading the virus,[3] the federal government began preparations to carry out its first executions in nearly twenty years. Each federal execution requires the gathering and movement of hundreds of staff and law enforcement officers, as well as media, legal, family, and spiritual advisor witnesses, many of whom travel from around the country.[4] Such movement raises questions about Defendant's ability to carry out executions without further spreading the virus not just in the prison but into surrounding communities. Indeed, because prisons and jails are hotspots for COVID-19 and create an opportunity for further spread of the virus into surrounding communities, COVID-19 conditions in federal facilities have received widespread media coverage since the pandemic began.[5]

---

[1] *See e.g.,* Nina T. Harawa, *As COVID-19 flares behind bars, now's not the time for more Terre Haute executions,* IndyStar (Updated July 11, 2020) https://www.indystar.com/story/opinion/2020/07/08/op-ed-coronavirusflares-behind-bars-now-not-time-executions/5389249002/; *Worker aiding in federal execution prep tests positive for COVID-19*, Kark News (July 12, 2020) https://www.kark.com/news/localnews/worker-aiding-federal-execution-prep-tests-positive-for-covid-19/.
[2] *See e.g.,* Hailey Fuchs, *Federal Executions to Resume Amid a Pandemic and Protests*, New York Times, June 30, 2020.
[3] Keri Blakinger and Maurice Chammah, *How Coronavirus is Disrupting the Death Penalty*, The Marshall Project (March 23, 2020) https://www.themarshallproject.org/2020/03/23/how-coronavirus-is-disrupting-the-death-penalty; *As Legal Proceedings Go Virtual, Many States Postpone Executions*, ABA (July 24, 2020) https://www.americanbar.org/groups/committees/death_penalty_representation/project_press/2020/summer/states-postpone-executions-amid-covid19-pandemic/.
[4] *In Re Matter of Federal Bureau of Prisons' Execution Protocol Cases*, No. 1:19-mc-145-TSC, Declaration of Rick Winter ("Winter Decl."), ECF No. 54 (D.D.C. Nov. 21, 2019).
[5] *See e.g*., The Editorial Board, *The Coronavirus Crisis Inside Prisons Won't Stay Behind Bars*, New York Times (June 25, 2020) https://www.nytimes.com/2020/06/25/opinion/coronavirus-prisons-compassionate-release.html; Justin Carissimo, *Inmates are 5 times more likely to get coronavirus than the general population, study says*, CBS News (July 11, 2020) https://www.cbsnews.com/news/coronavirus-prison-inmates-more-likely-to-get-infected-study-says/?ftag=CNM-00-10aab7e&linkId=93578138 (reportinga study from Johns Hopkins University and UCLA's COVID-19 Behind Bars Project finding that people in prison are 5.5 times more likely to get COVID-19 and three times more likely to die as a result than people not behind bars); Kelly Davis, *Coronavirus in Jails and Prisons*, The Appeal (June 9, 2020) https://theappeal.org/coronavirus-in-jails-and-prisons-10/; C.J. Ciamamella*, 8 of the Top 10 Biggest U.S. Coronavirus Hotspots Are Prisons and Jails*, Reason (April 29, 2020) https://reason.com/2020/04/29/8-of-the-top-10-biggest-u-s-coronavirus-hotspots-are-prisons-and-jails/; Anagha Srikanth, Jails and prisons are some of the biggest coronavirus hotspots in the country, The Hill (April 28, 2020). https://thehill.com/changing-america/respect/equality/495039-jails-and-prisons-are-some-of-the-biggest-coronavirus.  This includes at the Terre Haute facility.  *See* Heather Good, *Union Reps Raise Concerns About Safety Inside Federal Prison Amid Outbreak*, WTHI-TV (Updated March 27, 2020)

Media coverage of changing COVID-19 conditions at FCC Terre Haute played a large role in informing the public debate about the propriety of carrying out federal executions during the pandemic.[6] On July 10, 2020, NPR reported that "people with experience at the Terre Haute prison doubted that [social distancing] would, in fact, be practical, given its narrow hallways, poor ventilation and a lack of space in the room where lawyers and clergy meet with prisoners before their deaths."[7]

On July 12, just two days before the first execution was scheduled to occur, the government disclosed that a staff member involved in preparations for the executions had tested positive for COVID-19. Although the BOP had previously vowed that all staff members would wear masks to reduce COVID-19 risks, it acknowledged that this staff member had worked without wearing a mask through July 8, at a time when he was likely infectious. He had participated in execution planning meetings with other officers, and had worked in the area of the prison where the prisoners scheduled for execution are housed. This disclosure was heavily covered by the national and local media outlets.[8] Subsequently, CNBC reported that "critics argued that the government was creating unnecessary and manufactured urgency for political

---

https://www.wthitv.com/content/news/Union-reps-raise-concerns-about-safety-inside-federal-prison-amid-outbreak-569141811.html.

[6] Nina T. Harawa, Op-ed: As Covid-19 flares behind bars, now's not the time for more Terre Haute executions, Indy Star (July 11, 2020) https://www.indystar.com/story/opinion/2020/07/08/op-ed-coronavirus-flares-behind-bars-now-not-time-executions/5389249002/;

[7] Carrie Johnson, Federal Executions Set to Resume After 17 Years With 3 Deaths Scheduled Soon, NPR (July 10, 2020) https://www.npr.org/2020/07/10/889667257/federal-executions-set-to-resume-after-17-years-with-3-deaths-scheduled-soon.

[8] *See e.g.*, Khaleda Rahman, *Federal Execution Planner Tests Positive for Coronavirus As Family of Victim Urge Postponement*, Newsweek (July 13, 2020) https://www.newsweek.com/prison-employee-involved-planning-federal-executions-coronavirus-1517317; Theresa Braine, *Federal Execution-prep worker tests positive for coronavirus*, NY Daily News (July 12, 2020) https://www.nydailynews.com/coronavirus/ny-coronavirus-federal-death-penalty-worker-execution-tests-positive-20200712-jjlvnjsounagdouxt4c6it4rwi-story.html; *Worker aiding preparation for federal execution tests positive for COVID-19*, USA Today (July 12, 2020) https://www.usatoday.com/story/news/politics/2020/07/12/covid-19-worker-aiding-prep-federal-execution-tests-positive/5424353002/.

gain" and that "developments are likely to add a new front to the national conversation about criminal justice reform in the lead-up to the 2020 elections."[9]

National and local media also heavily covered developments in several lawsuits seeking postponement of the federal executions based on the threat of COVID-19 to witnesses.[10] On July 2, 2020, for example, the ACLU filed suit on behalf of Reverend Dale Seigen Hartkemeyer, the medically vulnerable spiritual advisor for Wesley Purkey, alleging that carrying out Mr. Purkey's scheduled execution during the pandemic at a facility with a known COVID-19 outbreak burdened Rev. Hartkemeyer's right to the free exercise of religion by forcing him to choose between his spiritual obligation to be present at Mr. Purkey's execution and protecting his own health and safety. *Hartkemeyer v. Barr*, *et al.,* No. 2:20-cv-0036-JMS-DLP (S.D. Ind). Relatedly, the surviving victims' family members in the Daniel Lee case also filed suit due to the health risks they faced by traveling to Indiana in order to witness the execution. *Peterson v. Barr*, 2:20-cv-00350-JMS-DLP (S.D. Ind.). Although Defendant ultimately executed three men on July 14, 16, and 17, national and local media continued to report on COVID-19 conditions in and around the prison where the executions took place. Indeed, "[t]he week after the executions, Vigo County recorded its highest single-week increase to date."[11]

---

[9] *U.S. Carries Out 1st Federal Execution In Nearly 2 Decades after Supreme Court Clears the Way*, CNBC (July 14, 2020) https://www.cnbc.com/2020/07/14/us-supreme-court-allows-federal-executions-to-proceed.html
[10] *See e.g.,* Carrie Johnson, *Lawsuit Seeks Delay in Pending Federal Execution, Citing COVID-19 Infection Risks*, NPR (July 2, 2020) https://www.npr.org/2020/07/02/886403059/lawsuit-seeks-delay-in-pending-federal-executionciting-covid-infection-risks; Michael Balsamo, *Priest sues to stop federal execution over coronavirus risk*, Federal News Network (July 2, 2020) https://federalnewsnetwork.com/government-news/2020/07/priest-sues-to-stop-federal-executionover-coronavirus-risk/; Hailey Fuchs, Judge *Orders Delay of First Federal Executions in 17 Years*, New York Times (July 10, 2020) https://www.nytimes.com/2020/07/10/us/politics/first-federal-execution-delay.html;Hailey Fuchs, Federal Executions to Resume Amid a Pandemic and Protests, New York Times (Updated July 14, 2020) https://www.nytimes.com/2020/06/30/us/politics/federal-executions-pandemic.html
[11] Liliana Segura, *Trump's Killing Spree in Terre Haute*, The Intercept (August 2, 2020) https://theintercept.com/2020/08/02/federal-executions-indiana-trump-coronavirus/

5

Though the BOP purports to publicize updated COVID-19 data from each of its facilities on its website, the media have repeatedly called into question the accuracy of this data. On April 2, 2020, for example, Forbes published an article reporting reliability concerns about BOP-reported COVID-19 data and concluded, "perhaps Congress and Attorney General Barr are getting accurate information on COVID-19 outbreaks in prison but one fact is certain, the general public is not."[12] On at least one occasion, a local news outlet highlighted discrepancies between BOP's reported COVID-19 data and conditions at FCC Terre Haute, despite the fact that "the [BOP] website says it is updated daily."[13]

### B. Plaintiffs' FOIA Request and Defendant's Grant of Expedited Processing

On August 6, 2020, Plaintiffs submitted a FOIA Request to Defendant BOP seeking the release of two categories of records: (1) COVID-19 data at FCC Terre Haute, where federal prisoners are detained and executed; and (2) cost and staffing data related to federal executions. Declaration of Cassandra Stubbs ("Stubbs Decl.") ¶ 3.

Plaintiffs sought expedited processing of the Request on the basis that there is a "compelling need" for the records because the ACLU is primarily engaged in disseminating information, and the records sought are urgently needed to inform the public about actual or alleged federal government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v). Plaintiffs requested Defendant disclose the records within ten days of receiving the request in light of the quickly approaching execution dates. Plaintiffs also sought a waiver of document search, review, and duplication fees on the ground that disclosure of the requested records is "in the public interest

---

[12] Walter Pavlo, *Bureau of Prisons Underreporting COVID-19 Outbreaks in prisons*, Forbes (April 1, 2020) https://www.forbes.com/sites/walterpavlo/2020/04/01/bureau-of-prisons-underreporting-outbreaks-in-prison/#3daee69b7ba3.
[13] Lisa Trigg, Case of COVID-19 infection reported at federal prison in Terre Haute, Tribune-Star (May 18, 2020) https://www.tribstar.com/news/case-of-covid-19-infection-reported-at-federal-prison-in-terre-haute/article_85a075ee-9940-11ea-87fe-fb3a2398734d.html.

6

because it is likely to contribute significantly to public understanding of the operations or activities of the government." *Id.* § 552(a)(4)(A)(iii).

By email dated August 7, 2020, the Defendant acknowledged receipt of the Request, assigned it reference number 2020-06027, and stated that the "request meets the requirements to be processed on an expedited basis." The email also stated, however, that processing may take up to six months." Stubbs Decl. ¶ 4.

Though Plaintiffs continue to seek disclosure of all the records requested in their FOIA request, to facilitate receiving some of the critically important public information before this week's scheduled executions, Plaintiffs have narrowed their request for immediate disclosure to include only documents showing the results of COVID-19 testing data of FCC Terre Haute prisoners and staff, not including personal identifying information, from July 1, 2020 to the present, and documents showing the results of any contact tracing conducted as a result of the July 4-8, 2020 COVID-19 exposure to BOP staff and death row prisoners, also not including personal identifying information.

On August 21, 2020, Plaintiffs emailed BOP FOIA counsel Eugene Baime notifying him of Plaintiffs' intent to file the Complaint in this case later that day. Stubbs Decl. ¶ 7. Plaintiffs also informed BOP Counsel that they planned to file a Motion for a Temporary Restraining Order unless Defendant disclosed the limited COVID-19 testing and contact tracing outlined above before 11:00 a.m. Eastern time on August 24, 2020. *Id*. The only response Plaintiffs have received from BOP is a two line email that the FOIA request "is still being processed at this time," and BOP is "unable to give a completion date." *Id*. at ¶ 5.

**ARGUMENT**

With the next executions now scheduled for Wednesday and Friday (August 26 and 28), the public does not know, because Defendant has withheld the relevant documents, the scope of

7

the COVID-19 outbreak among the staff and the prison population at Terre Haute, and the scope of the risk that carrying out these executions will widen infections to individuals and communities around the country. Although Defendant acknowledged Plaintiffs' legal entitlement to expedited processing, the agency has failed to comply with FOIA's provisions for expedited processing. Defendant's failure to process Plaintiffs' Request constitutes a continuing impediment to Plaintiffs' (and the public's) ability to examine and participate in the debate about BOP's role in the spread of COVID-19 by carrying out federal executions, which require the gathering and movement of hundreds of individuals—many from around the country—in a facility with a known COVID-19 outbreak.

Plaintiffs satisfy the requirements for a temporary restraining order. They are likely to succeed on the merits (that they are entitled under FOIA to receive the records expeditiously); the failure to produce the records immediately will irreparably harm their ability to obtain and use the requested information for public debate about the upcoming federal executions; complying with the narrow emergency relief sought by Plaintiffs will not injure Defendants; and the public's interest clearly lies with disclosure.

### A. The Court has Jurisdiction, and Authority, to Grant the Requested Relief

The Court's jurisdiction to consider this matter and grant appropriate relief is clear. First, the Freedom of Information Act itself directly provides that:

> On complaint, the district court of the United States . . . in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.

5 U.S.C. § 552(a)(4)(B). *See Al-Fayed v. CIA*, 254 F.3d 300, 304 (D.C. Cir. 2001). The Court also has jurisdiction under 28 U.S.C. § 1331 ("[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States").

8

FOIA also provides that upon receipt of a FOIA request, an agency shall determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefore, and of the right of such person to appeal to the head of the agency any adverse determination. 5 U.S.C. § 552(a)(6)(A). The Act thus requires agencies, *under routine circumstances*, to process requests within twenty working days. However, by requiring that "[a]n agency *shall process as soon as practicable* any request for records to which the agency has granted expedited processing," 5 U.S.C. § 552(a)(6)(E)(iii) (emphasis added), Congress clearly anticipated that "expedited processing" would result in agency compliance with a request in less than twenty working days. That urgency is also reflected in the statutory requirement that an agency must respond to a request for expedited processing within ten calendar days. 5 U.S.C. § 552(a)(6)(E)(ii). Thus, an agency that grants expedited processing does not have unfettered discretion to determine when to process expedited requests. *See Elec. Privacy Info. Ctr. v. Dep't of Justice*, 416 F. Supp. 2d 30, 38 (D.D.C. 2006).

In this case, Defendant acknowledged that Plaintiffs are statutorily entitled to processing of the requested records on an expedited basis, which triggers the FOIA requirement that processing occur "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii). Defendant's estimate that processing may take up to six months—well beyond the statutory time requirement for even routine processing—demonstrates Defendant's refusal to comply with the FOIA requirements for expedited processing in a timely manner. *See Elec. Privacy Info. Ctr. v. Dep't of Justice*, 416 F. Supp. 2d 30, 38 (D.D.C. 2006) (citing *Am. Civil Liberties Union v. Dep't of Def.*, 339 F. Supp. 2d 501, 503 (S.D.N.Y. 2004), for the proposition that judicial intervention is appropriate where an agency granted expedited processing but unreasonably delayed such processing). "Failure to

9

process FOIA requests in a timely fashion is 'tantamount to denial.'" *Wash. Post v. Dep.'t of Homeland Sec.*, 459 F. Supp. 2d 61, 74 (D.D.C. 2006).

FOIA provides that "the court shall determine the matter de novo," and that Defendant bears the burden of sustaining its actions. 5 U.S.C. § 552(a)(4)(B).

### B. Plaintiffs are Entitled to Entry of a Temporary Restraining Order

In considering Plaintiffs' request for entry of a TRO compelling Defendant to immediately process and produce a narrow subset of records responsive to Plaintiffs' FOIA request, this Court must consider whether "(1) [Plaintiffs are] likely to succeed on the merits, (2) [they are] likely to suffer irreparable harm in the absence of preliminary relief, (3) … the balance of equities tips in [their] favor, and (4) … an injunction is in the public interest." *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

Consideration of these factors here establishes Plaintiffs' entitlement to emergency relief.

### C. Plaintiffs Are Likely to Succeed on the Merits

Plaintiffs are statutorily entitled to expeditious processing of their FOIA request and thus likely to succeed on the merits. FOIA requires federal agencies to "promulgate regulations . . . providing for expedited processing of requests for records in cases in which the person requesting the records demonstrates a compelling need; and in other cases determined by the agency." 5 U.S.C. § 552(a)(6)(E)(i). Pursuant to that directive, DOJ issued regulations, which apply to Defendant BOP, providing, that "[r]equests . . . shall be processed on an expedited basis whenever it is determined that they involve . . . [ii] an urgency to inform the public about an actual or alleged Federal Government activity, if made by a person who is primarily engaged in disseminating information; [iv] a matter of widespread and exceptional media interest in which

there exist possible questions about the government's integrity that affect the public confidence." 28 CFR § 16.5(e). In their initial FOIA Request, Plaintiffs clearly established that their request met BOP's regulatory standard for expedited processing. Upon de novo review, 5 U.S.C. § 552(a)(4)(B), this Court is likely to find that the administrative record supports Plaintiffs' claim for expedited processing. First, Plaintiffs demonstrated that their Request for information on COVID-19 data related to the recent and upcoming federal executions "involve[s] . . . [a] matter of widespread and exceptional media interest." 28 CFR § 16.5(e)(iv). In both Plaintiffs' request and this memorandum, Plaintiffs cited several articles by local and national media outlets reporting on the issue at hand. Second, Plaintiffs clearly demonstrated that the federal executions are "[a] matter . . . in which there exist possible questions about the government's integrity which affect public confidence." 28 CFR § 16.5(e)(iv). The government's role in contributing to the public health crisis by sponsoring potential super-spreader events– which "occur[] when a single person infects a large number of other people—sometimes 10, 20, sometimes even more in one setting"[14] – is a matter of great public concern. Since the inception of the pandemic, public health officials have encouraged government responses to COVID-19 to prioritize the reduction of infection rates. But the federal executions, and the days of intensive close contact by hundreds of staff and visitors at a prison with a known COVID-19 outbreak, have all the makings of a super-spreader event that threatens the lives of not only those involved in the executions themselves but of those in the communities from which the witnesses and participants traveled and will return after the executions have been carried out.[15] As such, one reporter wrote, "The government had the moral burden here,

---

[14] Nicole Brown, *What is a coronavirus "super-spreading" event?*, CBS News (May 15, 2020), https://www.cbsnews.com/news/super-spreader-coronavirus/.

[15] *See e.g.*, Kevin Johnson, Death Row inmate seeks execution delay, says coronavirus endangers Buddhist priest, USA Today (July 2, 2020) https://www.usatoday.com/story/news/politics/2020/07/02/coronavirus-inmate-wants-delay-death-penalty-over-virus-concerns/5362696002/ (reporting on "the resumption of federal executions in the midst of the coronavirus pandemic as super-spreader events"); Michael Balsamo, Priest sues to stop federal execution over coronavirus risk, Washington Post (July 2, 2020)

if not the legal one, to justify why the middle of an out-of-control deadly pandemic is the right time to kill in the name of the people."[16] Plaintiffs' likelihood of prevailing on the issue of whether the federal executions raise "possible questions about the government's integrity which affect public confidence" is high.

Indeed, Defendant already acknowledged that Plaintiffs' request is statutorily entitled to expedited processing. In its August 7, 2020 letter, Defendant stated, "Your request meets the requirement to be processed on an expedited basis." *See* Stubbs Decl. ¶ 4. Because BOP granted expedited processing, Plaintiffs' "request shall be given priority, placed in the processing track for expedited requests, and *shall be processed as soon as practicable*." C.F.R. §16.5(e)(4) (emphasis added). *See also* 5 U.S.C. § 552(a)(6)(E)(iii). The records requested in this motion for emergency relief are narrowly tailored to be simple to process, as they are limited to those documents with COVID-19 testing data for FCC Terre Haute prisoners and staff from July 1, 2020 to the present, and the results of contact tracing conducted as a result of the July 4-8, 2020 COVID-19 exposure to BOP staff and death row prisoners. Plaintiffs are not requesting any personally identifying information. This request is likely to produce a limited number of responsive records and should not take a substantial amount of time to redact (even assuming that statistical records without personally identifying information do not already exist). Additionally, Defendant BOP has been on notice that such documents are of interest to the national debate on the propriety of carrying out executions during a global pandemic, as Plaintiffs requested disclosure of the same materials as early as July 6, 2020 in connection to the

---

https://www.washingtonpost.com/politics/courts_law/priest-sues-to-stop-federal-execution-over-coronavirus-risk/2020/07/02/1fe8e20a-bc76-11ea-97c1-6cf116ffe26c_story.html (referring to the federal executions as a potential super-spreader event).
[16] Andrew Cohen, *Killing in Our Name During a Deadly Pandemic*, New York Intelligencer (July 14, 2020) https://nymag.com/intelligencer/2020/07/restarting-federal-executions-covid-19-unjustifiable.html.

*Hartkemeyer* case. *Hartkemeyer v. Barr*, *et al.,* No. 2:20-cv-0036-JMS-DLP, ECF 59-2 (Letter from Plaintiff ACLU Counsel to Defendant BOP Counsel, July 6, 2020). Plaintiffs again reiterated the need for the requested material and its importance to the national conversation regarding the upcoming federal executions in its FOIA Request on August 6, 2020, as described above.

D. **Plaintiffs will Suffer Irreparable Injury in the Absence of the Requested Injunctive Relief**

Unless Defendant's unlawful failure to expedite the processing of its FOIA request is immediately enjoined, Plaintiffs will suffer irreparable harm. The very nature of the right that Plaintiffs seek to vindicate in this action—expedited processing—depends upon timeliness. Courts have recognized that emergency relief is appropriate, and the requisite injury is present, in FOIA cases where "time is of the essence." *See, e.g., Banks v. Booth*, No. CV 20-849 (CKK), 2020 WL 3303006, at *1-*2 (D.D.C. June 18, 2020) (noting that the Court granted a TRO because of the urgency of addressing the COVID-19 crisis at the D.C. Jail); *Southern Poverty Law Ctr. v. U.S. Dep't of Homeland Sec.*, No. CV 18-760 (CKK), 2020 WL 3265533 (D.D.C. June 17, 2020) (granting a TRO because of the urgency of addressing the COVID-19 crisis in ICE detention facilities); *Confederated Tribes of Chehalis Reservation v. Mnuchin*, No. 20-CV-01002 (APM), 2020 WL 1984297 (D.D.C. Apr. 27, 2020) (granting a TRO because of the urgency of determining who qualifies for aid under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act); *Costa v. Bazron*, No. CV 19-3185 (RDM), 2020 WL 2025701 (D.D.C. Apr. 25, 2020) (granting a TRO because of the urgency of addressing the COVID-19 crisis at St. Elizabeths Hospital). Under the statutory scheme Congress established in FOIA, it is clear that "time is of the essence" here and that any further delay in the processing of Plaintiffs' request will cause irreparable injury. "To afford plaintiff[s] less than expedited judicial review

13

would all but guarantee that the plaintiff[s] would not receive expedited agency review of [their] FOIA request." *Washington Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61, 66 (D.D.C. 2006). Unless Defendant is ordered to process Plaintiffs' request immediately, Plaintiffs' right to expedition under FOIA will be irretrievably lost.

In addition to the loss of their clearly established legal right, any further delay in the processing of Plaintiffs' FOIA request will irreparably harm Plaintiffs' ability (and that of the public) to engage in informed discussion and debate on the issue of the government carrying out federal executions in the midst of a deadly pandemic, with the considerable risk to public health that the requested records are likely to reveal. For this reason, "in numerous cases in this federal district, courts have considered motions for preliminary injunctions in FOIA cases on an expedited basis," and have "rendered [their] decision[s] prior to the incident upon which Plaintiffs' assertions of expedited need were based." *Id.* (citing cases).

### E. Injunctive Relief Will Not Burden Others' Interests

Defendants cannot be said to be "burdened" by a requirement that they comply with the law. The immediate relief Plaintiffs seek will require nothing more of Defendant than what the law already mandates—the expedited processing of Plaintiffs' FOIA request. Nor will the requested relief burden the interests of other parties who have submitted FOIA requests to Defendant BOP in any manner beyond that foreseen by Congress. In providing for expedited processing of qualifying requests, Congress intended that such requests would take precedence over those that do not qualify for such treatment. Fulfillment of the legislative intent cannot be characterized as a burden on any party's interests.

14

### F. The Public Interest Favors the Requested Relief

The final criterion for the issuance of a TRO is clearly satisfied in this case. The D.C. Circuit has long recognized that "there is an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate." *Jacksonville Port Authority v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977).

Such adherence is all that Plaintiffs seek here. The public interest will also be served by the expedited release of the requested records, which will further FOIA's core purpose of "shedding light on an agency's performance of its statutory duties." *United States Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 773 (1989). As this Court has noted, "[t]here is public benefit in the release of information that adds to citizens' knowledge" of government activities. *Center to Prevent Handgun Violence v. U.S. Department of the Treasury*, 49 F. Supp. 2d 3, 5 (D.D.C. 1999). The public interest favors the issuance of an order directing Defendants to release the requested information forthwith.

### CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a temporary restraining order should be granted.

Respectfully submitted,

/s/ *Arthur B. Spitzer*
Arthur B. Spitzer (D.C. Bar No. 235960)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF THE DISTRICT OF
COLUMBIA
915 15th Street, NW, 2nd floor
Washington, DC 20005
(202) 601-4266
aspitzer@acludc.org

        Cassandra Stubbs*
        Henderson Hill (D.C. Bar No. 358378)
        Amy Fly
        AMERICAN CIVIL LIBERTIES UNION FOUNDATION
        201 W. Main St., Suite 402
        Durham, NC 27701
        (919) 688-4605
        cstubbs@aclu.org
        hhill@aclu.org
        afly@aclu.org

        *Attorneys for Plaintiffs*

---

*\*Motion for admission pro hac vice pending*