**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

AMERICAN CIVIL LIBERTIES UNION,          )
                                         )
AMERICAN CIVIL LIBERTIES UNION           )
FOUNDATION,                              )
                                         )
          *Plaintiffs*          )
                                         )
    v.                                  )    No. 1:20-cv-02320 (RBW)
                                         )
FEDERAL BUREAU OF PRISONS,               )
                                         )
          *Defendant.*          )
_____)

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Cassandra Stubbs
Henderson Hill (D.C. Bar No. 358378)
Amy Fly
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
201 W. Main St., Suite 402
Durham, NC 27701
(919) 688-4605
cstubbs@aclu.org
hhill@aclu.org
afly@aclu.org

Arthur B. Spitzer (D.C. Bar No. 235960)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF THE DISTRICT OF
COLUMBIA
915 15th Street, NW, 2nd floor
Washington, DC 20005
(202) 601-4266
aspitzer@acludc.org

*Attorneys for Plaintiffs*

**<u>Table of Contents</u>**

I.      INTRODUCTION ................................................................................................1

II.     STATEMENT OF FACTS .................................................................................3

III.    ARGUMENT.......................................................................................................6

        I.  The Court has Jurisdiction and Authority to Grant the Requested Relief ................6

        II. Plaintiffs are Entitled to a Preliminary Injunction ....................................8

            A. Plaintiffs are Likely to Succeed on the Merits.....................................8

            B. Plaintiffs will Suffer Irreparable Injury in the Absence of the Requested

        Injunctive Relief...........................................................................................12

            C. The Balance of Equities and the Public Interest Weigh in Favor of Injunctive

        Relief.............................................................................................................17

IV.     CONCLUSION................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguilera v. FBI*, 941 F. Supp. 144 (D.D.C. 1996) ....................................................................7, 11

*Ahuruonye v. U.S. Dep't of Interior*, 312 F. Supp. 3d 1 (D.D.C. 2018) ........................................8

*Al-Fayed v. CIA*, 254 F.3d 300 (D.D.C. 2001) ...............................................................................7

*Center to Prevent Handgun Violence v. U.S. Department of the Treasury*,
   49 F. Supp. 2d 3 (D.D.C. 1999) ...............................................................................................18

*Cleaver v. Kelley*, 427 F. Supp. 80 (D.D.C.1976) ....................................................................7, 12

*Elec. Privacy Info. Ctr. v. Dep't of Justice*, 416 F. Supp. 2d 30 (D.D.C. 2006).................... *passim*

*Hartkemeyer v. Barr, et al.*, No. 2:20-cv-0036-JMS-DLP (S.D. Ind) ...........................................4

*Jacksonville Port Authority v. Adams*, 556 F.2d 52 (D.C. Cir. 1977) .........................................17

*NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 352 (1976).............................................................8

*United States Dep't of Justice v. Reporters Committee for Freedom of the Press*,
   489 U.S. 749 (1989)....................................................................................................................18

*Washington Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61 (D.D.C. 2006).........7, 13, 14, 17

**Statutes**

5 U.S.C. § 552(a)(4)(A)(iii) ............................................................................................................5

5 U.S.C. § 552(a)(4)(B) ...............................................................................................................7, 9

5 U.S.C. § 552(a)(6)(E)(i) ...............................................................................................................9

5 U.S.C. § 552(a)(6)(E)(iii)........................................................................................................7, 11

5 U.S.C. § 552(a)(6)(E)(v) ..............................................................................................................5

Freedom of Information Act ..................................................................................................... *passim*

**Other Authorities**

28 CFR § 16.5(e)...............................................................................................................................9

28 CFR § 16.5(e)(iv)..............................................................................................................9, 10, 11

Andrew Cohen, *Killing in Our Name During a Deadly Pandemic*, New York
 Intelligencer (July 14, 2020)
 https://nymag.com/intelligencer/2020/07/restarting-federal-executions-covid-
 19-unjustifiable.html ......................................................................................................12

*As Legal Proceedings Go Virtual, Many States Postpone Executions*, ABA (July
 24, 2020)
 https://www.americanbar.org/groups/committees/death_penalty_representatio
 n/project_press/2020/summer/states-postpone-executions-amid-covid19-
 pandemic/ ....................................................................................................................17

Cassandra Stubbs, *Not even a Global Pandemic Could Stop the Federal
 Government from pursuing a string of back-10-back executions this summer*
 ACLU New & Commentary (Aug. 26, 2020),
 https://www.aclu.org/news/capital-punishment/not-even-a-global-pandemic-
 could-stop-the-federal-government-from-pursuing-a-string-of-back-to-back-
 executions-this-summer./ .................................................................................................1

*Conservative Commentator: Facing Coronavirus Budget Shortfalls, States Should
 Cut the Death Penalty*, Death Penalty Information Center (April 29, 2020)
 https://deathpenaltyinfo.org/news/conservative-commentator-facing-
 coronavirus-budget-shortfalls-states-should-cut-the-death-penalty ......................................11

Hailey Fuchs, *Federal Executions to Resume Amid a Pandemic and Protests*,
 New York Times (Updated July 14, 2020)
 https://www.nytimes.com/2020/06/30/us/politics/federal-executions-
 pandemic.html ............................................................................................................17

Hailey Fuchs, *Federal Executions to Resume Amid a Pandemic and Protests*,
 New York Times, June 30, 2020 ................................................................................4

https://www.bop.gov/coronavirus/ (last visited August 27, 2020) ........................................13, 17

Keri Blakinger and Maurice Chammah, *How Coronavirus is Disrupting the Death
 Penalty*, The Marshall Project (March 23, 2020)
 https://www.themarshallproject.org/2020/03/23/how-coronavirus-is-
 disrupting-the-death-penalty ..........................................................................................17

Khaleda Rahman, *Federal Execution Planner Tests Positive for Coronavirus As
 Family of Victim Urge Postponement*, Newsweek (July 13, 2020)
 https://www.newsweek.com/prison-employee-involved-planning-federal-
 executions-coronavirus-1517317 ....................................................................................3

Kimberly Amadeo, *What Criminal Sentence Costs More: Death or Life in Prison*,
 The Balance (November 29, 2019) https://www.thebalance.com/comparing-
 the-costs-of-death-penalty-vs-life-in-prison-4689874 ..........................................................11

iii

Kim Bellware, *Prisoners and guards agree about federal coronavirus response: 'we do not feel safe*,' The Washington Post (August 24, 2020) https://www.washingtonpost.com/nation/2020/08/24/prisoners-guards-agree-about-federal-coronavirus-response-we-do-not-feel-safe/......................................................16

Maurice Chammah, Six Reasons the Death Penalty is Becoming More Expensive, The Marshall Project (Dec. 17, 2014) https://www.themarshallproject.org/2014/12/17/six-reasons-the-death-penalty-is-becoming-more-expensive ...................................................................................11

Nina T. Harawa, *As COVID-19 flares behind bars, now's not the time for more Terre Haute executions,*IndyStar (Updated July 11, 2020) https://www.indystar.com/story/opinion/2020/07/08/op-ed-coronavirusflares-........................4

*Only Native American on Federal Death Row Executed*, Associated Press (August 27, 2020) https://www.wlfi.com/content/news/Only-Native-American-on-federal-death-row-executed-572237521.html ...........................................................10

Lisa Trigg, *Case of COVID-19 infection reported at federal prison in Terre Haute*, Tribune-Star (May 18, 2020) https://www.tribstar.com/news/case-of-covid-19-infection-reported-at-federal-prison-in-terre-haute/article_85a075ee-9940-11ea-87fe-fb3a2398734d.html ..................................................16

Theresa Braine, *Federal Execution-prep worker tests positive for coronavirus,* NY Daily News (July 12, 2020) https://www.nydailynews.com/coronavirus/ny-coronavirus-federal-death-penalty-worker-execution-tests-positive-20200712-jjlvnjsounagdouxt4c6it4rwi-story.html.....................................................3

Walter Pavlo, *Bureau of Prisons Underreporting COVID-19 Outbreaks in prisons*, Forbes (April 1, 2020) https://www.forbes.com/sites/walterpavlo/2020/04/01/bureau-of-prisons-underreporting-outbreaks-in-prison/#3daee69b7ba3 ..............................................16

*U.S. Carries Out 1ˢᵗ Federal Execution In Nearly 2 Decades after Supreme Court Clears the Way*, CNBC (July 14, 2020) https://www.cnbc.com/2020/07/14/us-supreme-court-allows-federal-executions-to-proceed.html .................................3, 17

*Why the Death Penalty Offends Conservatives*, Crime Report (August 19, 2020) https://thecrimereport.org/2020/08/19/why-the-death-penalty-offends-conservatives/.......................................................................................................10

*Worker aiding in federal execution prep tests positive for COVID-19*, Kark News (July 12, 2020) https://www.kark.com/news/localnews/worker-aiding-federal-execution-prep-tests-positive-for-covid-19/ .............................................3

iv

*Worker aiding preparation for federal execution tests positive for COVID-19*,
　　USA Today (July 12, 2020)
　　https://www.usatoday.com/story/news/politics/2020/07/12/covid-19-worker-
　　aiding-prep-federal-execution-tests-positive/5424353002/ ......................................................4

## INTRODUCTION

Plaintiffs American Civil Liberties Union and American Civil Liberties Union Foundation (collectively the "ACLU") submitted a Freedom of Information Act request to the Federal Bureau of Prisons (BOP) seeking records concerning the public health and financial costs associated with the Government's decision to resume federal executions, after a nearly twenty year hiatus, during the COVID-19 pandemic and at a facility with a known COVID-19 outbreak.  With the execution of Lezmond Mitchell on August 26, 2020 and Keith Nelson today, August 28, 2020, Attorney General Barr's Justice Department has executed more people during the pandemic than in the last 57 years combined.[1]  It has scheduled two more executions for next month and stated its intent to schedule others.

Although Defendant granted expedited processing of Plaintiffs' FOIA request, it has not substantively responded to Plaintiffs' request or produced any records.  Plaintiffs seek a preliminary injunction requiring production by September 18, 2020 of the requested documents related to COVID-19 conditions at the facility where federal prisoners are held and executed and the cost of carrying out these federal executions.  These records concern a matter of great interest, both to the public and the ACLU, a nonprofit organization primarily engaged in disseminating information about government activities that may affect the public confidence. The ACLU and other reporters and commentators have repeatedly questioned whether the federal executions should proceed in light of the COVID-19 conditions.  The withheld information is critical to: (1) the public health implications for those who may attend or protest future executions; and (2) the national dialogue on the wisdom and morality of carrying out such

---

[1] Cassandra Stubbs, *Not even a Global Pandemic Could Stop the Federal Government from pursuing a string of back-10-back executions this summer*,  ACLU New & Commentary (Aug. 26, 2020) https://www.aclu.org/news/capital-punishment/not-even-a-global-pandemic-could-stop-the-federal-government-from-pursuing-a-string-of-back-to-back-executions-this-summer./

executions.  This national dialogue is far from academic: it is "likely to add a new front to the national conversation about criminal justice reform in the lead-up to the 2020 elections,"[2] and may influence future decisions by the federal government or others regarding whether to continue scheduling executions during the COVID-19 pandemic.

Defendants anticipate that processing of Plaintiffs' request may take six months, because although Plaintiffs' request is in the expedited queue, it is at the end of that queue, with 154 requests ahead of it.  ECF No. 9-1, Decl. ¶¶ 13-14. Six months is simply too late to receive and publish the information in time to inform those individuals who may seek to protest or attend the September executions, to be relevant for the 2020 election debates, or to influence decision-makers in death penalty jurisdictions about whether to schedule additional execution dates this fall during the pandemic.

Plaintiffs sought a Temporary Restraining Order earlier this week for the immediate disclosure of a limited subset of the COVID-19 data.  ECF  5.  Defendant maintained that producing the requested disclosure in just one day's time, before the execution scheduled on Wednesday, August 26, 2020, would be "extremely difficult, if not impossible."  ECF  9-1, ¶ 15. This Court found that Plaintiffs had not shown the level of irreparable harm necessary to justify such an immediate request, and denied the motion without prejudice.  ECF 11.

Plaintiffs now seek a preliminary injunction requiring the expedited processing and release of agency records of such critical national interest by September 18, 2020.  The requirements for a preliminary injunction are readily satisfied: (1) Plaintiffs are likely to succeed on the merits of their claim that they are entitled to receive the non-exempt public records they have identified; (2) the ACLU and the public will be irreparably harmed absent an injunction

---

[2] *U.S. Carries Out 1st Federal Execution In Nearly 2 Decades after Supreme Court Clears the Way*, CNBC (July 14, 2020) https://www.cnbc.com/2020/07/14/us-supreme-court-allows-federal-executions-to-proceed.html

because the requested records are central to decisions about participating in the federal executions scheduled for September as well as to the national debate about carrying out executions during a deadly pandemic, including as part of the dialog around the upcoming 2020 elections; and (3) the balance of the equities and the public interest heavily favor the requested injunction, which would merely require the BOP to fulfill its statutory obligation to expeditiously process the ACLU's FOIA Request for documents that are of extraordinary value to the public. The Court should order the BOP to complete an immediate search for responsive records and to produce the documents without delay and no later than September 18, 2020.

## STATEMENT OF FACTS

The federal government decided this summer to carry out an unprecedented number of federal executions, during the ongoing COVID-19 pandemic and all at the Terre Haute Federal Correctional Complex (FCC Terre Haute), a prison with a known COVID-19 outbreak and on lock down to visitors.[3] This prompted significant public concern and debate about the safety of such a plan.[4]  These concerns escalated when the BOP revealed on July 12, 2020 that one of the guards involved in the preparations for the executions scheduled on July 13, 15, and 17 had tested positive for COVID-19.[5]  The BOP further disclosed that the guard – contrary to BOP

---

[3] *See e.g.,* Nina T. Harawa, *As COVID-19 flares behind bars, now's not the time for more Terre Haute executions,* IndyStar (Updated July 11, 2020) https://www.indystar.com/story/opinion/2020/07/08/op-ed-coronavirusflares-behind-bars-now-not-time-executions/5389249002/; *Worker aiding in federal execution prep tests positive for COVID-19*, Kark News (July 12, 2020) https://www.kark.com/news/localnews/worker-aiding-federal-execution-prep-tests-positive-for-covid-19/.
[4] *See e.g.,* Hailey Fuchs, *Federal Executions to Resume Amid a Pandemic and Protests*, New York Times, June 30, 2020.
[5] *See e.g.*, Khaleda Rahman, *Federal Execution Planner Tests Positive for Coronavirus As Family of Victim Urge Postponement*, Newsweek (July 13, 2020) https://www.newsweek.com/prison-employee-involved-planning-federal-executions-coronavirus-1517317; Theresa Braine, *Federal Execution-prep worker tests positive for coronavirus*, NY Daily News (July 12, 2020) https://www.nydailynews.com/coronavirus/ny-coronavirus-federal-death-penalty-worker-execution-tests-positive-20200712-jjlvnjsounagdouxt4c6it4rwi-story.html; *Worker aiding preparation for federal execution tests positive for COVID-19*, USA Today (July 12, 2020) https://www.usatoday.com/story/news/politics/2020/07/12/covid-19-worker-aiding-prep-federal-execution-tests-positive/5424353002/

assertions otherwise – had worked at the prison without wearing a mask.  Stubbs Decl. Ex. B, July 12, Decl. of Rick Winter, ¶ 7.  While likely contagious, he had come into contact with the death row housing unit and other law enforcement agents involved in the executions, including those preparing for the "handling of demonstrators at the scheduled executions."  *Id.* at *¶* 6.  The BOP stated that it was conducting contract tracing, although it conceded that it had not concluded those efforts.  *Id.*, ¶ 9.

The revelation about the exposure from the guard came in response to litigation filed by the ACLU on behalf of a medically vulnerable spiritual advisor to one of the men scheduled for execution in July.  *Hartkemeyer v. Barr*, *et al.,* No. 2:20-cv-0036-JMS-DLP (S.D. Ind). In that the suit, the federal district court had ordered the BOP to explain "any changes to the protocol following the recent confirmed COVID-19 infection of an FCC Terre Haute staff member."  *Hartkemeyer*, ECF 79.  The BOP identified no such measures.  Ultimately, the federal court denied the relief requested in that lawsuit on the ground that the religious advisors were not likely to succeed on demonstrating a substantial burden on their religious beliefs.  ECF 84, at 5.  The three federal executions in July were all carried out, with no additional public information about the contract tracing results or the safety of the executions during the pandemic.

On August 6, 2020, Plaintiffs submitted a Freedom of Information Act request to Defendant BOP seeking release of two categories of records: (1) COVID-19 data at FCC Terre Haute, including the documents related to contact tracing; and (2) cost and staffing data related to federal executions. ECF 5-3, at 3-10.

Plaintiffs sought expedited processing on the grounds there is a "compelling need" for the records because the ACLU is primarily engaged in disseminating information, and the records sought are urgently needed to inform the public about actual or alleged federal

government activity. ECF 5-3, at 8. *See* 5 U.S.C. § 552(a)(6)(E)(v). Plaintiffs also sought a waiver of document search, review, and duplication fees on the ground that disclosure of the requested records is "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government." ECF 5-3, at 9. *See* 5 U.S.C. § 552(a)(4)(A)(iii). Defendant BOP granted expedited processing the next day, on August 7, 2020, but estimated that such processing may take up to six months. ECF 5-3, at 19.

On August 21, 2020, Plaintiffs notified Defendant of Plaintiffs' intent to file the Complaint in this case later that day. ECF. 5-3, ¶ 7. Plaintiffs also informed BOP Counsel that they planned to file a Motion for a Temporary Restraining Order unless Defendant disclosed a limited number of documents about COVID-19 testing and contact tracing before 11:00 a.m. Eastern time on August 24, 2020. *Id*. The only response Plaintiffs have received from BOP is a two-line email that the FOIA request "is still being processed at this time," and that BOP is "unable to give a completion date." *Id*. at ¶ 5.

On August 24, 2020, Plaintiffs filed a Motion for a Temporary Restraining Order seeking production of a limited number of documents by noon the following day to allow for the opportunity to review and disseminate the disclosed materials prior to the August 26, 2020 execution. ECF 5. The following day, this Court held a hearing on the motion and denied relief without prejudice for failure to show irreparable harm in the absence of a Temporary Restraining Order. ECF 11.

## ARGUMENT

Two federal executions are scheduled for September 22 and 24. After five back-to-back executions (three in July and two this week), the public still does not know the scope of the

COVID-19 outbreak among the staff and the prison population at FCC Terre Haute, and the scope of the risk that carrying out these executions will lead to rising infections in individuals and communities in that vicinity and around the country. Additionally, the public does not know how much of their own tax dollars were spent, and will continue to be spent, to carry out unsafe executions during a time when the pandemic has abruptly forced the nation into an unprecedented economic crisis. Although Defendant acknowledged Plaintiffs' legal entitlement to expedited processing of their request for this information, the agency has failed to comply with FOIA's provisions for expedited processing.  Defendant's failure to process Plaintiffs' Request constitutes a continuing impediment to Plaintiffs' (and the public's) ability to examine and participate in the debate about BOP's role in the spread of COVID-19 by carrying out federal executions, which require the gathering and movement of hundreds of individuals—many from around the country—in a facility with a known COVID-19 outbreak.

Plaintiffs satisfy the requirements for a preliminary injunction.  They are likely to succeed on the merits that they are entitled under FOIA to receive the records, and to receive them expeditiously; the failure to produce the records immediately will irreparably harm their ability to obtain and disseminate the requested information to the public in a timely manner; complying with the narrow emergency relief sought by Plaintiffs will not injure Defendant; and the public's interest clearly lies with disclosure.

## I.      The Court has Jurisdiction and Authority to Grant the Requested Relief

The FOIA explicitly grants this Court jurisdiction to consider this matter and to grant appropriate relief:

> On complaint, the district court of the United States . . . in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.

5 U.S.C. § 552(a)(4)(B); *see also Al-Fayed v. CIA*, 254 F.3d 300, 304 (D.D.C. 2001).

In this case, Defendant acknowledged that Plaintiffs are statutorily entitled to processing of the requested records on an expedited basis, thereby triggering the FOIA requirement that processing occur "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii). Defendant's estimate that processing may take up to six months demonstrates Defendant's refusal to comply with the FOIA requirements for expedited processing in a timely manner. *See Elec. Privacy Info. Ctr. v. Dep't of Justice*, 416 F. Supp. 2d 30, 38 (D.D.C. 2006) (citing *Am. Civil Liberties Union v. Dep't of Def.*, 339 F. Supp. 2d 501, 503 (S.D.N.Y. 2004), for the proposition that judicial intervention is appropriate where an agency granted expedited processing but unreasonably delayed such processing). "Failure to process FOIA requests in a timely fashion is 'tantamount to denial'" and is subject to judicial review. *Wash. Post v. Dep.'t of Homeland Sec.*, 459 F. Supp. 2d 61, 74 (D.D.C. 2006).

This Court has the authority to grant the requested preliminary injunctive relief. "On numerous occasions, federal courts [in the D.C. Circuit] have entertained motions for a preliminary injunction in FOIA cases and, when appropriate, have granted such motions." *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 416 F. Supp. 2d 30, 35 (D.D.C. 2006); *see e.g., Aguilera v. FBI,* 941 F. Supp. 144, 152-53 (D.D.C. 1996); *Cleaver v. Kelley,* 427 F. Supp. 80, 81–82 (D.D.C.1976); *Washington Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61, 66 (D.D.C. 2006). In *EPIC v. DOJ*, the Court explicitly rejected Defendant's characterization of requests for preliminary injunctive relief in FOIA cases as a litigation tactic seeking "a version of the ultimate relief in the case . . . to artificially accelerate the proceedings in [the] case." *EPIC v. DOJ*, 416 F. Supp. 2d at 35 (quotations omitted). Indeed, "the D.C. Circuit has held that 'the FOIA imposes no limits on courts' equitable powers in enforcing its terms' and 'unreasonable

delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent such abuses" through appropriate relief— including through preliminary injunctive relief. *Id.* (quoting *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988)) (internal citations omitted).

## II.   Plaintiffs are Entitled to a Preliminary Injunction

Plaintiffs are entitled to a preliminary injunction because the BOP's unlawful refusal to expeditiously process the ACLU's FOIA Request causes the ACLU irreparable harm and conflicts with the public interest. A plaintiff is entitled to a preliminary injunction upon demonstrating that "[1] that [the Plaintiff] is likely to succeed on the merits, [2] that [the Plaintiff] is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [the Plaintiff's] favor, and [4] that an injunction is in the public interest." *Ahuruonye v. U.S. Dep't of Interior*, 312 F. Supp. 3d 1, 9 (D.D.C. 2018) (quoting *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011)).  The ACLU readily satisfies each of these factors.

### A.   Plaintiffs Are Likely to Succeed on the Merits

Plaintiffs are statutorily entitled to expeditious processing and production of their FOIA request and thus likely to succeed on the merits. The FOIA's purpose is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co*., 437 U.S. 352, 261 (1976). To promote this goal, FOIA requires federal agencies to "promulgate regulations . . . providing for expedited processing of requests for records in cases in which the person requesting the records demonstrates a compelling need; and in other cases determined by the agency." 5 U.S.C. § 552(a)(6)(E)(i). Pursuant to that directive, DOJ issued regulations, which

apply to Defendant BOP, providing that "[r]equests . . . shall be processed on an expedited basis whenever it is determined that they involve . . . [ii] an urgency to inform the public about an actual or alleged Federal Government activity, if made by a person who is primarily engaged in disseminating information; [iv] a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect the public confidence." 28 CFR § 16.5(e).

In this case, there is no dispute that the ACLU's FOIA request is statutorily entitled to expedited processing. Defendants have not argued otherwise and BOP explicitly granted Plaintiffs' request for expedited status. ECF 9, at 4. Upon de novo review, 5 U.S.C. § 552(a)(4)(B), this Court is likely to find that the administrative record supports Plaintiffs' claim for expedited processing.  First, as Plaintiffs demonstrated in their initial FOIA Request, the requested information on COVID-19 data relates to the recent and upcoming federal executions "involve[s] . . . [a] matter of widespread and exceptional media interest." 28 CFR § 16.5(e)(iv). In both Plaintiffs' request and this memorandum, Plaintiffs cited several articles by local and national media outlets reporting on COVID-19 conditions at FCC Terre Haute and the danger involved in carrying out executions during a deadly pandemic. Similarly, the requested information related to the cost of the federal executions is likely to be a matter of widespread and exceptional media interest, particularly in light of the upcoming election and the criticism that the Trump administration resumed executions solely to "claim the mantle of law-and-order candidate." [6] While the cost of administering the death penalty more generally has been the subject of several media pieces in the recent past,[7] government spending on the federal

---

[6] *Only Native American on Federal Death Row Executed*, Associated Press (August 27, 2020) https://www.wlfi.com/content/news/Only-Native-American-on-federal-death-row-executed-572237521.html.
[7] Jared Olsen, *Why the Death Penalty Offends Conservatives*, Crime Report (August 19, 2020) https://thecrimereport.org/2020/08/19/why-the-death-penalty-offends-conservatives/ ; Kimberly Amadeo, *What*

executions during an unprecedented economic crisis caused by a global pandemic will undoubtedly attract largescale media attention once BOP no longer withholds that information from the public. Indeed, several commentators have argued that states should abolish the death penalty in response to declining tax revenue and rising costs related to the pandemic.[8]

Second, Plaintiffs clearly demonstrated that the upcoming federal executions are "[a] matter . . . in which there exist possible questions about the government's integrity which affect public confidence." 28 CFR § 16.5(e)(iv). The government's role in contributing to the public health crisis by sponsoring potential super-spreader events— which "occur[] when a single person infects a large number of other people—sometimes 10, 20, sometimes even more in one setting"– is a matter of great public concern. Since the inception of the pandemic, public health officials have encouraged government responses to COVID-19 to prioritize the reduction of infection rates. But the federal executions, and the days of intensive close contact by hundreds of staff and visitors at a prison with a known COVID-19 outbreak, have all the makings of a super-spreader event that threatens the lives of not only those involved in the executions themselves but of those in the communities from which the witnesses and participants traveled and to which they will return after the executions have been carried out. Similarly, the extent to which the government has prioritized taxpayer dollars for executions while the nation's economy is in flux is likely to shake the public's confidence. As one reporter wrote, "[t]he government had the moral burden here, if not the legal one, to justify why the middle of an out-of-control deadly

---

*Criminal Sentence Costs More: Death or Life in Prison*, The Balance (November 29, 2019) https://www.thebalance.com/comparing-the-costs-of-death-penalty-vs-life-in-prison-4689874; Maurice Chammah, Six Reasons the Death Penalty is Becoming More Expensive, The Marshall Project (Dec. 17, 2014) https://www.themarshallproject.org/2014/12/17/six-reasons-the-death-penalty-is-becoming-more-expensive;

[8] *See e.g*., *Conservative Commentator: Facing Coronavirus Budget Shortfalls, States Should Cut the Death Penalty*, Death Penalty Information Center (April 29, 2020) https://deathpenaltyinfo.org/news/conservative-commentator-facing-coronavirus-budget-shortfalls-states-should-cut-the-death-penalty.

pandemic is the right time to kill in the name of the people."[9] Plaintiffs' likelihood of prevailing on the issue of whether the federal executions raise "possible questions about the government's integrity which affect public confidence" is high.

Because BOP granted expedited processing, Plaintiffs' "request shall be given priority, placed in the processing track for expedited requests, *and shall be processed as soon as practicable.*" C.F.R. §16.5(e)(4) (emphasis added). *See also* 5 U.S.C. § 552(a)(6)(E)(iii). Defendant has previously argued that this provision under FOIA merely "entitles requesters to move immediately to the front of the [regular] processing queue, ahead of requests filed previously by other persons, but at the end of the queue of other outstanding requests that have previously been granted expedited processing." ECF 9 at 9. Thus, according to Defendant, BOP is required to process the other 154 FOIA requests pending in the expedited processing track before getting to Plaintiff's FOIA request. *Id.*  This Court, however, explicitly rejected that argument in *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 416 F. Supp. 2d at 37. According to the Court, BOP's reading of the FOIA "would give the agency unchecked power to drag its feet and pay lip service to a requester's statutory and regulatory entitlement to expedition," and "runs counter to the language of the statute and relevant case law." *Id*. Indeed, this Court has also found that "certain requestors, upon an adequate showing, would be allowed to 'leap frog' to the front of the [expedited processing] line." *Aguilera v. F.B.I.*, 941 F. Supp. 144, 152 (D.D.C. 1996) (granting preliminary injunction for expedited production of 275 FBI records despite 2,095 requestors in the expedited processing queue ahead of Plaintiff). Though FOIA itself does not impose a concrete deadline for expedited processing, "relevant case law establishes that courts have the authority to impose concrete deadlines on agencies that delay the processing of requests

---

[9] Andrew Cohen, *Killing in Our Name During a Deadly Pandemic*, New York Intelligencer (July 14, 2020) https://nymag.com/intelligencer/2020/07/restarting-federal-executions-covid-19-unjustifiable.html.

meriting expedition." *Id.* at 38. *See e.g.*, *Cleaver v. Kelley,* 427 F. Supp. 80, 81–82 (D.D.C. 1976) (granting preliminary injunction in FOIA case and requiring expedited processing to be completed within approximately twenty days because of criminal prosecution).

Further, the preliminary injunction is narrowly tailored so that the records requested thereunder will be simple to process, as they are limited to those documents with COVID-19 testing data for FCC Terre Haute prisoners and staff from July 1, 2020 to the present, the results of contact tracing conducted as a result of the July COVID-19 exposure to BOP staff and death row prisoners, and BOP costs related to carrying out the July executions. Plaintiffs are not requesting any personal identifying information. This request is likely to produce a limited number of responsive and easily identifiable records which Defendant keeps in the ordinary course of business. The requested cost data, for example, is contained in BOP contracts, and the requested information related to COVID-19 testing and contact tracing is contained in documents that BOP purports to rely on in responding to and managing the COVID-19 outbreak at its facilities.[10] None of the records should take a substantial amount of time to redact (even if statistical records without personally identifying information do not already exist).

### B.      Plaintiffs will Suffer Irreparable Injury in the Absence of the Requested Injunctive Relief

Unless Defendant's unlawful failure to expedite the processing of its FOIA request is enjoined, Plaintiffs will suffer irreparable harm. The very nature of the right that Plaintiffs seek to vindicate in this action—expedited processing—depends upon timeliness, and upon the receipt of this information before the executions scheduled for September 22 and September 24. Courts have recognized that emergency relief is appropriate, and the requisite injury is present, in FOIA cases where "time is of the essence." *See, e.g., Washington Post v. Dep't of Homeland Sec.*, 459

---

[10] *See* https://www.bop.gov/coronavirus/ (last visited August 27, 2020).

F. Supp. 2d 61, 66 (D.D.C. 2006) (granting injunctive relief in FOIA case for expedited disclosure of visitation log records because the "plaintiff will be irreparably harmed without expedited processing of its FOIA request"). Under the statutory scheme Congress established in FOIA, it is clear that "time is of the essence" here and that any further delay in the processing of Plaintiffs' request will cause irreparable injury. "To afford plaintiff[s] less than expedited judicial review would all but guarantee that the plaintiff[s] would not receive expedited agency review of [their] FOIA request." *Washington Post* 459 F. Supp. 2d at 66. Unless Defendant is ordered to process Plaintiffs' request without delay, Plaintiffs' right to expedition under FOIA will be irretrievably lost.Three decision points underscore the urgency of the timely processing and disclosure of the public information sought in this case: (1) for the September executions, the COVID-19 information will provide important and unique information about the level of health risk to those  individuals who may wish to protest or witness the executions may face; (2) for the November executions, the use of the death penalty is an important part of the public debate on criminal justice reform in numerous state and federal elections, including the costs and impacts of carrying out executions; and (3) for future scheduling of execution dates during the pandemic, the record about the spread of COVID-19 and the impact on those involved provides critical data.

Any further delay in the processing of Plaintiffs' FOIA request will irreparably harm Plaintiffs' ability to inform the public of information in time for these decision points. "[I]n numerous cases in this federal district, courts have considered motions for preliminary injunctions in FOIA cases on an expedited basis," and have "rendered [their] decision[s] prior to the incident upon which Plaintiffs' assertions of expedited need were based." *Washington Post,* 459 F. Supp. 2d at 66 (citing cases).

**The Urgent Public Health Need**.  In this case, receiving records after the upcoming federal executions are carried out—potentially six months from now—will be too late to publish the information in time to protect members of the public who may be unwittingly exposed to extremely dangerous conditions as a direct result of government action. In less than one month, numerous members of the public, including protestors and members of the media will travel to the Terre Haute prison. They will be joined by hundreds of BOP and other federal employees, and law enforcement personnel participating in the executions, as well as others there to witness the executions, including family members of the victims, spiritual advisors, lawyers, and family members of the death row prisoners. Whether they will elect to attend the execution may well turn on the degree of documented and known danger.

The information sought by Plaintiffs would significantly contribute to the public's evaluation of the risk from COVID-19 posed by attending the September executions.  The BOP has published no information about the results of its contact tracing from the exposure by the BOP guard.  It is impossible for a protestor, for example, to know whether BOP excluded all of the law enforcement agents who attended the protestor security meeting with the infected guard from participating in the September executions, or whether the BOP simply hoped no one would become infected.  The level of care and proactive steps undertaken by the BOP to identify those individuals exposed would provide at least an important window into the precautions future protestors can expect in anticipation of the September executions.

The non-comprehensive COVID-19 data reported on BOP's website is an insufficient replacement for the requested information. Though the BOP purports to publicize updated COVID-19 data from each of its facilities on its website, media and lawmakers alike have repeatedly called into question the accuracy of this data. On April 2, 2020, for example, Forbes

14

published an article reporting reliability concerns about BOP-reported COVID-19 data and concluded, "perhaps Congress and Attorney General Barr are getting accurate information on COVID-19 outbreaks in prison but one fact is certain, the general public is not."[11]  On at least one occasion, a local news outlet highlighted discrepancies between BOP's reported COVID-19 data and conditions at FCC Terre Haute despite the fact that "the [BOP] website says it is updated daily."[12] On August 24, 2020, the Washington Post reported that though "the Bureau of Prisons' response to the coronavirus pandemic was endangering the lives of federal employees and prisoners alike[,]" BOP is "attempt[ing] to create the impression that the virus is under control in facilities while papering over a deepening health and safety crisis."[13] In fact, "the data [BOP] does publish on coronavirus cases and deaths is [so] non-comprehensive and opaque" that it prompted lawmakers to introduce a bill this month that would hold federal correctional facilities accountable for lack of transparency in collecting and reporting on COVID-19 infections and deaths.[14]  A sponsor for the bill explained the need for the bill despite BOP's purported reporting of COVID-19 data by stating, "we have government officials who act as if this [COVID-19 data in BOP facilities] is their private information."[15]

---

[11] Walter Pavlo, *Bureau of Prisons Underreporting COVID-19 Outbreaks in prisons*, Forbes (April 1, 2020) https://www.forbes.com/sites/walterpavlo/2020/04/01/bureau-of-prisons-underreporting-outbreaks-in-prison/#3daee69b7ba3.
[12] Lisa Trigg, Case of COVID-19 infection reported at federal prison in Terre Haute, Tribune-Star (May 18, 2020) https://www.tribstar.com/news/case-of-covid-19-infection-reported-at-federal-prison-in-terre-haute/article_85a075ee-9940-11ea-87fe-fb3a2398734d.html.
[13] Kim Bellware, Prisoners and guards agree about federal coronavirus response: 'we do not feel safe,' The Washington Post (August 24, 2020) https://www.washingtonpost.com/nation/2020/08/24/prisoners-guards-agree-about-federal-coronavirus-response-we-do-not-feel-safe/.
[14] *Id.*
[15] *Id.*

Further, although BOP purports to update the website data daily, the updated information is reflective of the files in the BOP's Office of Occupational Health and Safety, and it is unclear how often this particular office is provided with updated information from FCC Terre Haute.[16]

**The Critical National Debate and Upcoming Elections.** The requested records are also important to the current national discussion of the morality and wisdom of carrying out executions during the pandemic—a topic relevant to the question of scheduling additional executions during the pandemic and the November elections. Numerous state and federal executives have implemented either official or de facto execution moratoriums in the face of public concern about executions during the pandemic.[17] The ACLU is entitled to obtain and publish important, non-exempt information about how the government has carried out and is carrying out executions during the pandemic and at what cost. There is currently no publicly available information about the costs involved in executions.  The Defendant, in the context of other litigation, has described hiring numerous contractors and law enforcement personnel for the executions but it has not described what jobs those contractors perform or why contractors are required.  ECF 5-3, at 12-14.   These are undeniably matters of public interest.  For example, CNBC reported that "the government was creating unnecessary and manufactured urgency [to carry out federal executions] for political gain," as reviving the death penalty could be used as a tough-on-crime talking point in the lead up to the 2020 election.[18] Other critics questioned "why

---

[16] *See* https://www.bop.gov/coronavirus/ (last visited August 27, 2020).
[17] Keri Blakinger and Maurice Chammah, *How Coronavirus is Disrupting the Death Penalty*, The Marshall Project (March 23, 2020) https://www.themarshallproject.org/2020/03/23/how-coronavirus-is-disrupting-the-death-penalty; *As Legal Proceedings Go Virtual, Many States Postpone Executions*, ABA (July 24, 2020) https://www.americanbar.org/groups/committees/death_penalty_representation/project_press/2020/summer/states-postpone-executions-amid-covid19-pandemic/.
[18] *U.S. Carries Out 1ˢᵗ Federal Execution In Nearly 2 Decades after Supreme Court Clears the Way*, CNBC (July 14, 2020) https://www.cnbc.com/2020/07/14/us-supreme-court-allows-federal-executions-to-proceed.html.

the Justice Department did not use those resources allocated to resume federal executions to

protect prisons from the coronavirus."[19]

The upcoming execution dates in September and the election in November give

undeniable urgency to this case.  Voters will have an opportunity to weigh in on the performance

of many executive branch officials around the country, including the federal government's, and

their treatment of death-sentenced defendants will be among the issues they consider. *See*

*Washington Post v. Department of Homeland Sec.*, 459 F. Supp. 2d 61, 75 (D.D.C. 2006)

("Because the urgency with which the plaintiff makes its FOIA request is predicated on a matter

of current national debate, due to the impending election, a likelihood for irreparable harm exists

if the plaintiff's FOIA request does not receive expedited treatment."). BOP has already

implicitly acknowledged that the information Plaintiffs seek is urgent by granting Plaintiffs'

request for expedited processing. *See Electronic Privacy Information Center v. Department of*

*Justice,* 416 F. Supp. 2d 30, 41 (D.D.C. 2006) ( "Moreover, DOJ's arguments challenging the

irreparable nature of the harm sustained by [Plaintiff] as a result of [Defendant's] delay is

severely undermined by its determination that EPIC's FOIA requests merit expedition.").

## C.  The Balance of Equities and the Public Interest Weigh in Favor of Injunctive Relief

The D.C. Circuit has long recognized that "there is an overriding public interest . . . in the

general importance of an agency's faithful adherence to its statutory mandate." *Jacksonville Port*

*Authority v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977).  Such adherence is all that Plaintiffs seek

here. The public interest will also be served by the expedited release of the requested records,

which will further FOIA's core purpose of "shedding light on an agency's performance of its

statutory duties." *United States Dep't of Justice v. Reporters Committee for Freedom of the*

---

[19] Hailey Fuchs, *Federal Executions to Resume Amid a Pandemic and Protests*, New York Times (Updated July 14, 2020) https://www.nytimes.com/2020/06/30/us/politics/federal-executions-pandemic.html.

*Press*, 489 U.S. 749, 773 (1989). As this Court has noted, "[t]here is public benefit in the release of information that adds to citizens' knowledge" of government activities. *Center to Prevent Handgun Violence v. U.S. Department of the Treasury*, 49 F. Supp. 2d 3, 5 (D.D.C. 1999). The public interest favors the issuance of an order directing Defendants to release the requested information promptly.

## CONCLUSION

For the above reasons, this Court should grant ACLU's Motion for a Preliminary Injunction and order the BOP to process and produce and produce the records sought in ACLU's FOIA Request by September 18, 2020.

August 28, 2020                                    Respectfully submitted,

Cassandra Stubbs
Henderson Hill (D.C. Bar No. 358378)
Amy Fly
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
201 W. Main St., Suite 402
Durham, NC 27701
(919) 688-4605
cstubbs@aclu.org
hhill@aclu.org
afly@aclu.org

/s/ *Arthur B. Spitzer*
Arthur B. Spitzer (D.C. Bar No. 235960)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF THE DISTRICT OF
COLUMBIA
915 15th Street, NW, 2nd floor
Washington, DC 20005
(202) 601-4266
aspitzer@acludc.org
*Attorneys for Plaintiffs*