UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION, et al., | ) ) ) ) |  |
| Plaintiffs, | ) ) |  |
| v. | ) ) | Civil Action No. 20-2320 (RBW) |
| FEDERAL BUREAU OF PRISONS, | ) ) ) |  |
| Defendant. | ) ) ) |  |

## MEMORANDUM OPINION

The plaintiffs, the American Civil Liberties Union and the American Civil Liberties Union Foundation, bring this civil action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Declaratory Judgement Act, 28 U.S.C. §§ 2201 and 2202, against the defendant, the Federal Bureau of Prisons (the "Bureau"), seeking "the release of two categories of records: (1) COVID-19 data at [Federal Correctional Complex ("FCC")] Terre Haute, where federal prisoners are detained and executed; and (2) cost and staffing data related to federal executions." Complaint for Injunctive and Declaratory Relief ("Compl.") ¶ 17. Currently pending before the Court is the Plaintiffs' Motion to Strike Declaration of Kara Christenson ("Pls.' Mot." or the "plaintiffs' motion"), ECF No. 44. Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that it must deny the plaintiffs' motion.

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) Declaration of Kara Christenson (the "Christenson Declaration" or "Christenson Decl."), ECF No. 38-4; (2) the plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion to Strike Declaration of Kara Christenson ("Pls.' Mem."), ECF No. 44-1; (3) the Defendant's Opposition to Plaintiffs' Motion to Strike

(continued . . .)

## I.    BACKGROUND

### A.    Factual Background

The following allegations are taken from the plaintiffs' Complaint, unless otherwise indicated.

On August 21, 2020, the plaintiffs filed this case, "seeking declaratory and injunctive relief to compel compliance with the requirements of FOIA to immediately release improperly withheld agency records." Compl. ¶ 1. In particular, the plaintiffs claim that "against [the] backdrop" of the COVID-19 pandemic, "the Federal Government announced its plan to resume executions of federal prisoners—the first in nearly two decades." Id. ¶ 4. The plaintiffs allege that

> the Federal Government amassed hundreds of people at the Federal Correctional Complex, Terre Haute (FCC Terre Haute)—a facility with a known COVID-19 outbreak—for the sole purpose of carrying out the executions of Daniel Lee on July 14, 2020, Wesley Purkey on July 16, 2020, and Dustin Honken on July 17, 2020.

Id. ¶ 5. According to the plaintiffs, "[t]he government proceeded with these executions even though [the Bureau] learned that one of its staff members, who had been working in the prison without a mask and attending meetings with other staff involved in the executions, tested positive for COVID-19." Id.

The plaintiffs assert that "[a]s the nation faces both dire public health and economic crises, the federal government's actions prioritizing the use of American tax dollars on executions that could further spread the virus is a matter of public concern." Id. ¶ 7. As a result,

---

(. . . continued)
Declaration of Kara Christenson ("Def.'s Opp'n"), ECF No. 48; (4) Supplemental Declaration of Kara Christenson (the "Supplemental Christenson Declaration" or "Suppl. Christenson Decl."), ECF No. 48-1; and (5) the Plaintiffs' Reply in Support of Motion to Strike Declaration of Kara Christenson ("Pls.' Reply"), ECF No. 51.

"the [plaintiffs] submitted a FOIA request . . . to [the] Bureau on August 6, 2020[,] seeking records related to this issue, including information about COVID-19 conditions within FCC Terre Haute and expenses associated with federal executions." Id.

**B.      The Christenson Declaration**

On March 5, 2021, in support of its motion for summary judgment, the defendant filed a declaration from Kara Christenson, a Government Information Specialist ("GIS") for the Bureau. See Christenson Decl. ¶ 1.  Christenson states in her declaration that, as a GIS and former paralegal for the North Central Regional Office ("NCRO") who has been "employed by [the Bureau] since March 1992[,]" id., she is "familiar with the procedures followed by [the Bureau] and the NCRO in responding to requests made pursuant to FOIA[,]" id. ¶ 3, and is specifically "familiar with the [c]omplaint filed by the [p]laintiffs[,]" id. ¶ 2.  In her declaration, Christenson provided information regarding: (1) the Bureau's procedures when responding to FOIA requests, see id. ¶¶ 4–10; (2) the plaintiffs' FOIA request specifically, see id. ¶¶ 11–13; (3) the search for responsive records regarding the plaintiffs' FOIA request, including Christenson's own involvement in this process, see id. ¶¶ 14–22; and (4) the application of exemptions, specifically exemption 4, see id. ¶¶ 23–40, exemption 6, see id. ¶¶ 41–49, and exemption 7(A)–(F), see id. ¶¶ 50–88.

**C.      Procedural History**

On March 5, 2021, the defendant filed its motion for summary judgment.  See Defendant's Motion for Summary Judgment ("Def.'s Mot. for Summ. J.") at 1, ECF No. 38.  In support of its motion, the defendant also submitted a declaration from Kara Christenson, a Government Information Specialist for the Bureau.  See Christenson Decl. ¶ 1.  After filing a cross-motion for summary judgment and opposition to the defendant's motion for summary

judgment, see Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Cross-Motion for Summary Judgment and Opposition to Defendant's Motion for Summary Judgment ("Pls.' Cross-Mot. for Summ. J. and Opp'n") at 1, ECF No. 41-1, on May 3, 2021, the plaintiffs also filed their motion to strike the Christenson Declaration, see Pls.' Mot. at 1.  On May 28, 2021, the defendant filed its opposition to the plaintiffs' motion to strike, see Def.'s Opp'n at 1, including a supplemental declaration from Kara Christenson, see Suppl. Christenson Decl. at 1.  On June 18, 2021, the plaintiffs filed their reply in support of their motion to strike.  See Pls.' Reply at 1.

## II.   STANDARD OF REVIEW

"Motions to strike are 'drastic remed[ies] that courts disfavor,' although the 'decision to grant or deny a motion to strike is vested in the trial judge's sound discretion.'"  Riddick v. Holland, 134 F. Supp. 3d 281, 285 (D.D.C. 2015) (alteration in original) (quoting United States ex rel. Landis v. Tailwind Sports Corp., 308 F.R.D. 1, 4 (D.D.C. 2015)).  In the Rule 56 motion for summary judgment context, "[a] court may strike all improper portions of an affidavit used to support or oppose a motion for summary judgment."  Canady v. Erbe Elektromedizin GmbH, 384 F. Supp. 2d 176, 180 (D.D.C. 2005) (citing Fed. R. Civ. P. 56(e)).  Pursuant to Rule 56, declarations submitted in support of a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(c)(4).  Thus, "the 'requirement of personal knowledge by the affiant is unequivocal, and cannot be circumvented,' and [a]n affidavit based merely on information and belief is unacceptable."  Judicial Watch, Inc. v. U.S. Dep't of Com., 224 F.R.D. 261, 263 (D.D.C. 2004) (quoting Londrigan v. Fed. Bureau of Investigation, 670 F.2d 1164, 1174 (D.C. Cir. 1982)).

And, although motions to strike are "considered an exceptional remedy and . . . generally disfavored[,]" Larouche v. Dep't of the Treasury, No. 91-1655, 2000 WL 805214, at *13 (D.D.C. Mar. 31, 2000), "a court may carefully strike improper portions of the affidavit, while retaining all properly stated facts[,]" Judicial Watch, Inc., 224 F.R.D. at 263.

### III.   ANALYSIS

The plaintiffs argue that striking Part IV of the Christenson Declaration is warranted because portions of the declaration "are deficient under the Federal Rules of Civil Procedure[.]" Pls.' Mem. at 1. According to the plaintiffs, those portions: (1) "are not based upon personal knowledge," (2) "exceed the range of topics to which [Christenson] is competent to testify," and (3) "rely on inadmissible hearsay." Id. (citing Fed. R. Civ. P. 56(c)(4), 56(e)). In response, the defendant argues that "[the p]laintiffs' motion is based on a flawed understanding of how the personal knowledge, hearsay, and competency requirements apply in the FOIA context[,]" Def.'s Opp'n at 1, wherein courts "allow[] agency declarants . . . to provide declarations that are based on the declarants' knowledge of the documents, familiarity with agency practices, as well as their discussions with others with first-hand knowledge[,]" id. at 2. In reply, the plaintiffs reiterate their arguments concerning the alleged deficiencies of the Christenson declaration and also add that, in light of the supplemental Christenson declaration submitted by the defendant along with its opposition, see generally Suppl. Christenson Decl., "inaccuracies and inconsistencies [between] the [two] Christenson declarations suggest bad faith by the [d]efendant and remove the presumption of accuracy otherwise due to agency declarations." Pls.' Reply at 3. The Court

will address each of the plaintiffs' arguments regarding the Christenson declarations—personal knowledge, competency, hearsay, and bad faith—in turn.[2]

### A.  Personal Knowledge

First, the Court addresses the plaintiffs' argument that, in her declaration, "Christenson neither demonstrates personal knowledge nor identifies adequate documentation for her assertions[,]" Pls.' Mem. at 5, and "[t]herefore, these portions of the declaration must be stricken[,]" id., pursuant to Rules 56(c)(4) and 56(e), id. at 2.  The plaintiffs seek specifically to strike Part IV of the Christenson declaration, see id., which concerns the application of FOIA exemptions to material that was withheld from release, see Christenson Decl. at 13, because the plaintiffs take issue with Christenson's statements regarding Bureau suppliers' and third-party contractors' requests for confidentiality and these entities' motivations for making these requests, see Pls.' Mem. at 2–3.  The plaintiffs contend that "Christenson repeatedly makes factual assertions about events that purportedly occurred during negotiations between government agents and third-party contractors[,]" id., despite the fact that she "does not state that she was present at these conversations nor does she state that she learned of these conversations through her review of FOIA documents[,]" id. at 3.  Rather, the plaintiffs argue that Christenson goes a

---

[2] As a preliminary matter, the Court addresses the plaintiffs' argument that the Court must "reject the new declaration" submitted with the defendant's opposition.  Pls.' Reply at 1; see Suppl. Christenson Decl.  Although the plaintiffs identify discrepancies between the original declaration and supplemental declaration as support for their argument regarding bad faith, see Pls.' Reply at 1 ("[T]his new declaration, itself and implicit concession of the facial deficiencies in her prior declaration, raises new troubling questions about the veracity of [ ] Christenson's declarations[.]"); id. at 1–4 (arguing that the declarations are "[i]nconsistent and [e]vidence of [b]ad [f]aith"), the plaintiffs provide no authority for the proposition that the Court may not consider a supplemental declaration in response to the plaintiffs' qualms with the prior declaration, see generally Pls.' Reply.  In fact, other members of this Court have considered supplemental declarations submitted during both the motion for summary judgment and motion to strike briefing processes.  See, e.g., Cucci v. Drug Enf't Admin., 871 F. Supp. 508, 513 (D.D.C. 1994) (considering a supplemental declaration in determining whether to strike the declarations submitted by the defendant for lack of personal knowledge); see also, e.g., Discepolo v. U.S. Dep't of Just., No. 16-cv-2351, 2018 WL 6624360, at *5 (D.D.C. Nov. 15, 2018) (considering supplemental declarations submitted during motion for summary judgment briefing in a FOIA case, over the plaintiff's objection).  In light of the plaintiffs' failure to provide any authority in support of their position, and other courts' consideration of supplemental declarations in similar situations, the Court concludes that it may consider the defendant's supplemental declaration in ruling on the plaintiffs' motion to strike.

step further by also "speculat[ing] about the motivation for the [third-party contractors] to request privacy and the government to offer it." Id.; see also id. at 4 (stating that Christenson "claims that sharing information about the pricing of drugs or medical equipment 'would subject the companies to a competitive disadvantage,' [Christenson Decl.] ¶ 39, and "repeatedly makes sweeping statements about the [Bureau]'s precarious sources of lethal injection drugs, while once again providing no foundation of personal knowledge"). In response, the defendant argues that courts "allow[] agency declarants in FOIA cases to provide declarations that are based on the declarants' knowledge of the documents, familiarity with agency practices, as well as their discussions with others with first-hand knowledge." Def.'s Opp'n at 2. And, the defendant asserts that "Christenson's declaration was made on the basis of her personal knowledge, information she learned through the performance of her official duties, and her review of official files and records." Id. at 4 (citing Christenson Decl. ¶ 3; Suppl. Christenson Decl.).

Pursuant to Rule 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion for summary judgment must be made on personal knowledge[.]" Fed. R. Civ. P. 56(c)(4). In the context of a FOIA case, "it is well settled that 'FOIA declarants may include statements in their declarations based on information they have obtained in the course of their official duties.'" Hainey v. U.S. Dep't of the Interior, 925 F. Supp. 2d 34, 41 (D.D.C. 2013) (quoting Barnard v. U.S. Dep't of Homeland Sec., 598 F. Supp. 2d 1, 19 (D.D.C. 2009)). However, "an agency declarant need not have been personally involved in the events reflected in, or preparation of, the records at issue but merely have personally been advised about or reviewed those records to meet the Rule 56 standard." Buzzfeed, Inc. v. Fed. Bureau of Investigation, No. 18-cv-2567, 2020 WL 2219246, at *9 n.5 (D.D.C. May 7, 2020) (citing cases). For example, declarations have been deemed admissible in FOIA cases where the content was based on

7

"information provided to [the declarant] by other agency employees and [her] own review of agency records." Wisdom v. U.S. Tr. Program, 232 F. Supp. 3d 97, 115 (D.D.C. 2017); see Prop. of the People, Inc. v. U.S. Dep't of Justice, 405 F. Supp. 3d 99, 125 (D.D.C. 2019) (finding the personal knowledge requirement satisfied for admissibility where the information contained in the declaration was "based upon [the declarant's] personal knowledge, upon information provided to [the declarant] in [the declarant's] official capacity, and upon conclusions and determinations reached and made in accordance therewith").

Here, Christenson indicates that she has "first-hand knowledge about the scope of documents maintained by the [defendant] related to death penalty issues and how [the defendant] maintains those documents and associated information because [she] provide[s] administrative and litigation assistance regarding death-penalty issues." Suppl. Christenson Decl. ¶ 2; see Christenson Decl. ¶¶ 1, 3. She further states that she has: "personally participated in discussions with [the defendant's] supplier of Pentobarbital in active pharmaceutical ingredient ("API") form[,]" Suppl. Christenson Decl. ¶ 3; "personally participated in discussions with third-party contractors and with [Bureau] officials engaged in discussions with the third-party contractors who provide critical execution-related services[,]" id. ¶ 4; and "communicated directly with [Bureau] officials engaged in discussions with the [Bureau] supplier of compounded Pentobarbital[,]" id. ¶ 5.

Further, in her supplemental declaration, Christenson addresses the bases for her conclusions in Part IV of her declarations, regarding application of FOIA exemptions, with which the plaintiffs take issue. See Suppl. Christenson Decl. ¶¶ 7–12 (explaining the basis for personal knowledge regarding paragraphs 31–32, 38–39, 68, and 78 of the declaration). As a basis for each of these statements, Christenson indicates some combination of "personal

8

participation in conversations[,]" id. ¶¶ 7–8; see id. ¶ 10, "information provided to [her] by other [Bureau] employees[,]" id. ¶ 8; see id. ¶¶ 11–12, her "review of documents[,]" id. ¶ 8; see id. ¶¶ 11–12, and her "familiar[ity] . . . based on [her] capacity providing litigation assistance regarding death penalty issues[,]" id. ¶ 11; see id. ¶ 9.  These categories fall well within the realm of "information [she] ha[s] obtained in the course of [her] official duties[,]" Hainey, 925 F. Supp. 2d at 41, as they constitute "[the declarant's] personal knowledge" obtained through direct participation in the relevant conversations, Prop. of the People, Inc., 405 F. Supp. 3d at 125, "information provided to [her] by other agency employees[,]" Wisdom, 232 F. Supp. 3d at 115, "[her] own review of agency records[,]" id., or a combination thereof.

Furthermore, having reviewed Part IV of the declaration, the Court concludes that the remaining statements regarding the applicability of statutory exemptions to information withheld from the defendants' FOIA production to the plaintiffs fall within the scope of Christenson's personal knowledge as a "Government Information Specialist" for the defendant.  See Christenson Decl. ¶ 1.  As an official who "provide[s] administrative and litigation assistance regarding death-penalty issues[,]" Suppl. Christenson Decl. ¶ 2, to the defendant, Christenson is "testif[ying] to [her] own observations upon review of . . . documents[,]" Londrigan, 670 F.2d at 1174, "practices of which [she] possesses personal knowledge[,]" id., and "information . . . obtained in the course of [her] official duties[,]" Barnard, 598 F. Supp. 2d at 19.  She also relies on information gained through personal participation in meetings with suppliers and third-party contractors, see Suppl. Christenson Decl. ¶ 7, which further exceeds the standard necessary to demonstrate personal knowledge.  See Buzzfeed, Inc., 2020 WL 2219246, at *9 n.5 ("[A]n agency declarant need not have been personally involved in the events reflected in, or preparation of, the records at issue[.]").  And, to the extent that Christenson remarks on "the

9

motivation for the [third parties] to request privacy and for the government to offer it[,]" Pls.' Mem. at 3, she is basing these representations "upon conclusions and determinations reached and made in accordance[,]" Prop. of the People, Inc., 405 F. Supp. 3d at 125, with the knowledge she gleaned in the course of performing her official duties.  See Ecological Rts. Found. v. U.S. Envtl. Prot. Agency, 541 F. Supp. 3d 34, 44 (D.D.C. 2021) (concluding that a declarant had personal knowledge where the declarant remarked on agency members' motivations for having privacy concerns, and based these statements on "information contained in the records of the [defendant]" and "information supplied to [the declarant] by [other] employees").  For all of these reasons, the Court concludes that Christenson possessed the requisite personal knowledge to support the assertions in Part IV of her declaration.

**B.     Competency**

Next, the Court addresses the plaintiffs' argument challenging Christenson's competency.  The plaintiffs argue that Christenson "is not competent to testify to matters related to lethal injection drugs, execution procedures, business models of suppliers for executions, or concrete security risks of disclosing exempt information" because "[s]he neither has personal knowledge of these facts nor is she a subject matter expert."  Pls.' Mem. at 5.  Specifically, the plaintiffs take issue with Christenson's discussions of "[the] [Bureau]'s exclusive reliance on its current manufacturer and compounding pharmacy for pentobarbital," "the security measures and procedures used at FCC Terre Haute in connection with the executions," and "the competitive impact that release of information would purportedly have on contractors and suppliers."  Id. at 6 (citing Christenson Decl. ¶¶ 39, 68, 78).  In response, the defendant argues that the plaintiffs' "arguments are duplicative [of their arguments regarding personal knowledge] because [the p]laintiffs' theory is that [ ] Christenson lacks competency to testify on certain issues because she

lacks personal knowledge of them." Def.'s Opp'n at 11. The defendant further contends that Christenson is competent because she "based her statements on either personal knowledge, her review of documents, or other information provided to her in the course of her official duties[.]" Id. at 11–12.

Pursuant to Rule 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion for summary judgment must . . . show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). In the FOIA context, the standards to establish the requirements of personal knowledge and competency overlap significantly, such that they are often analyzed in tandem. See, e.g., Londrigan, 670 F.2d at 1174–75; Blunt-Bey v. U.S. Dep't of Just., 612 F. Supp. 2d 72, 74 (D.D.C. 2009); Larouche, 2000 WL 805214, at *14. Thus, a declarant is competent to testify under Rule 56(c)(4) if she has "an independent basis of personal knowledge." Judicial Watch, Inc., 224 F.R.D. at 265. However, as discussed, supra Section III.A, personal knowledge in the FOIA context may be "based upon [the declarant's] personal knowledge, upon information provided to [the declarant] in [the declarant's] official capacity, and upon conclusions and determinations reached and made in accordance therewith." Prop. of the People, Inc., 405 F. Supp. 3d at 125. Accordingly, personal knowledge need not be based on the direct involvement of the declarant in the matters to which she is testifying. See Buzzfeed, Inc., 2020 WL 2219246, at *9 n.5.

Ultimately, the Court concludes that Christenson is competent to testify for the same reasons that it finds she possessed the level of personal knowledge required by Rule 56(c)(4). See supra Section III.A. Furthermore, in regards to the plaintiffs' objections to specific material as it relates to competency, see Pls.' Mem. at 6, the bases for these statements have been adequately addressed in the supplemental declaration. See Suppl. Christenson Decl. ¶ 10 (stating

that paragraph 39 of the declaration is "based on [Christenson's] knowledge" of third parties' concerns regarding disclosure, as well as "communications [she] participated in with the supplier of Pentobarbital"); id. ¶ 11 (stating, in support of paragraph 68 of the declaration, she is "familiar with the [p]rotective [o]rder and the concerns giving rise to that order based on [her] capacity providing litigation assistance[,]" that she has "spoken with [Bureau] employees and officials who regularly voiced their concerns" regarding release of information, and that she "reviewed documents indicating the same"); id. ¶ 12 (stating that paragraph 78 of the declaration is based on her "review of [ ] documents[,]" and "conversations with [Bureau] officials responsible for implementing [ ] security measures"). Accordingly, the Court concludes that Christenson was competent to provide the information contained in Part IV of the declaration.

**C.      Hearsay**

Next, the Court addresses the plaintiffs' hearsay argument. The plaintiffs argue that several of Christenson's statements should be stricken because "the information is clearly not based on her personal knowledge, but instead on undisclosed and obviously second-hand sources." Pls.' Mem. at 6. For example, the plaintiffs point specifically to a statement by Christenson concerning third parties "expressly requir[ing] or request[ing] that the [g]overnment maintain [ ] information as confidential[,] . . . a condition to which the [g]overnment has agreed to abide during in-person meetings and/or telephone conference calls." Id. at 7 (quoting Christenson Decl. ¶ 31); see also id. ("[U]nder a system of 'restricted communications' where information was disclosed 'only to those within the agency who were directly involved in the process,' assurances were made to contractors 'that their identities would not be disclosed[.]'" (quoting Christenson Decl. ¶ 38)). The plaintiffs argue that "[n]owhere does Christenson state that she was present for the conversations with contractors and individuals referenced in these

statements[,]" and therefore, this information constitutes hearsay. Id. In response, the defendant argues that "Christenson was personally involved in many of these conversations[.]" Def.'s Opp'n at 12. The defendant further argues that, to the extent Christenson obtained information through means other than personal knowledge or observation, her statements are nonetheless admissible in the FOIA context because "hearsay in FOIA declarations is often permissible[,]" Schoenman v. Fed. Bureau of Investigation, 575 F. Supp. 2d 166, 172 (D.D.C. 2008), as "FOIA declarants may rely on information obtained through inter-agency consultation[,]" Humane Soc'y of the U.S. v. Animal & Plant Health Inspection Serv., 386 F. Supp. 3d 34, 44 (D.D.C. 2019). See Def.'s Opp'n at 12–13.

Pursuant to Rule 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion for summary judgment must . . . set out facts that would be admissible in evidence[.]" Fed. R. Civ. P. 56(c)(4). Generally, "[h]earsay is inadmissible unless it falls within one of the exceptions to the hearsay rule." Rassoulpour v. Washington Metro. Area Transit Auth., 826 F.2d 98, 100 (D.C. Cir. 1987) (citing Fed. R. Evid. 802). However, the information a declarant provides in a FOIA matter need not be independently corroborated in order to survive a hearsay objection. See Canning v. U.S. Dep't of State, 134 F. Supp. 3d 490, 510 (D.D.C. 2015) (concluding an agency declarant "who is familiar with FOIA procedures and has reviewed the documents in question [ ] may make a decision based in part on information obtained in the course of h[er] official duties without triggering a need for additional declarations from the individuals [s]he consulted"). "Hearsay evidence in testimony by agency declarants based upon information gleaned from personal familiarity with agency practices or from information relayed by other agency personnel" has been deemed admissible in FOIA cases. Ecological Rts. Found., 541 F. Supp. 3d at 50 (citing Londrigan, 670 F.2d at 1174–75).

13

Here, as noted in the supplemental declaration, Christenson's knowledge regarding the statements challenged by the plaintiffs came either through first-hand participation in relevant conversations or intra-agency communications regarding such conversations.  See Suppl. Christenson Decl. ¶¶ 3–9.  Any information which Christenson obtained first-hand through either her familiarity with procedures or participation in discussions with third parties clearly does not constitute hearsay in the FOIA context.  See Fed. R. Evid. 801.  Moreover, Christenson represents in her supplemental declaration that, to the extent she acquired information from others, she did so through communications with other agency personnel, see Suppl. Christenson Decl. ¶¶ 3–9, which is permitted in FOIA cases, see Human Soc'y of the U.S., 386 F. Supp. 3d at 44 ("FOIA declarants may rely on information obtained through inter-agency consultation.").  Accordingly, the Court concludes that, because Christenson's statements are derived either from first-hand knowledge, participation in conversations in with third-party contractors, or consultation with other agency officials, they are not subject to a hearsay challenge and are admissible in the FOIA context.

**D.     Bad Faith**

Finally, the Court turns to the plaintiffs' allegation of bad faith, as asserted in their reply.[3]  The plaintiffs argue that "inaccuracies and inconsistencies in the Christenson declarations suggest bad faith by the [d]efendant and remove the presumption of accuracy otherwise due to agency declarations."  Pls.' Reply at 3.  Specifically, the plaintiffs state that "Christenson described her search process in inconsistent terms across declarations filed closely in time."  Id. at 2.  The plaintiffs also note that "another [Bureau] declarant has already been found untruthful

---

[3] The Court notes that, because the plaintiffs raised their bad faith argument in their reply, the defendant has not had an opportunity to respond to this argument.

14

with respect to representations about the recent federal executions." Id. at 3 (citing Smith v. Barr, No. 20-630, 2021 WL 71168, at *6 (S.D. Ind. Jan. 7, 2021)).

"[U]ntil evidence appears to the contrary, agencies are entitled to a presumption of administrative regularity and good faith." Fed. Trade Comm'n v. Owens-Corning Fiberglas Corp., 626 F.2d 966, 975 (D.C. Cir. 1980); see also Ass'n of Nat'l Advertisers, Inc. v. Fed. Trade Comm'n, 627 F.2d 1151, 1171 (D.C. Cir. 1979) (requiring "a clear and convincing showing . . . to rebut the presumption of administrative regularity"). When considering whether an agency declaration was made in bad faith, "[t]he sufficiency of the affidavit[] is not undermined by a mere allegation of agency misrepresentation or bad faith, nor by past agency misconduct in other unrelated cases." Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv., 608 F.2d 1381, 1387 (D.C. Cir. 1979). Furthermore, "[t]he only situation in which the Court would withhold a presumption of good faith as to a sworn agency declaration is if the plaintiffs were able to present contrary evidence of bad faith." Mobley v. Cent. Intelligence Agency, 924 F. Supp. 2d 24, 63 (D.D.C. 2013) (finding that "inconsistency in [the declarant's] declaration [was] not evidence of bad faith").

Here, neither of the plaintiffs' assertions—namely, inconsistencies between the two declarations or evidence of wrongdoing on the part of another agency official in another case—warrants a finding of bad faith on the part of the defendant, because the presumption of administrative good faith will not be defeated by the presence of "inconsistency in [a declarant's] declaration[,]" Mobley, 924 F. Supp. 2d at 63, or evidence of "past agency misconduct in unrelated cases[,]" Hayden, 608 F.2d at 1387. The plaintiffs have not advanced any other basis for a finding of bad faith, see generally Pls.' Reply; see also Mobley, 924 F. Supp. 2d at 63 (requiring that the plaintiffs put forth affirmative evidence of bad faith), and therefore, the Court

concludes that the plaintiffs have failed to establish that the defendant acted in bad faith. Accordingly, because the Court finds that the Christenson declaration is supported by the personal knowledge, competency, and admissibility required by Rule 56(c)(4), and because the plaintiffs have failed to establish that the defendant acted in bad faith, the Court must deny the plaintiffs' motion to strike Christenson's declarations.

## IV.     CONCLUSION

For the foregoing reasons, the Court concludes that it must deny the plaintiffs' motion to strike.

**SO ORDERED** this 28th day of April, 2022.[4]

REGGIE B. WALTON<br>
United States District Judge

---

[4] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.